1   Arnold R. Levinson    (State Bar No. 066583)
    Rebecca Grey          (State Bar No. 194940)
2   Brian H. Kim          (State Bar No. 215492)
    PILLSBURY & LEVINSON, LLP
3   The Transamerica Pyramid
    600 Montgomery Street, Thirty-First Floor
4   San Francisco, California 94111
    Telephone: (415) 433-8000
5   Facsimile: (415) 433-4816

6
    Attorneys for Plaintiff,
7   ERNIE ECHAGUE

8

9

10

11

12  ERNIE ECHAGUE, an individual,

13                  Plaintiff,

14  v.

15
    METROPOLITAN LIFE INSURANCE
16  COMPANY, TRINET GROUP, INC.,
    PACIFIC COAST BANKERS' BANK,
17  THE TRINET GROUP, INC. GROUP
    SUPPLEMENTAL LIFE INSURANCE
18  PLAN, and DOES 1 through 100,
    inclusive,
19

20                  Defendants.

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Case No. CV 12 0040

**COMPLAINT FOR DAMAGES FOR
RECOVERY OF EMPLOYEE BENEFITS
(29 U.S.C. §1132(A)(1)(B); EQUITABLE
RELIEF (29 U.S.C. §1132(a)(3))**

COMES NOW, Plaintiff ERNIE ECHAGUE ("Plaintiff") and complains of the

Defendants, and each of them, and on information and belief, alleges as follows:

## GENERAL ALLEGATIONS

    1.      Plaintiff ERNIE ECHAGUE ("Plaintiff") was, and now is, a resident of the

City of San Leandro, County of Alameda, State of California, and is a named beneficiary

under the Policy of insurance in issue.

1

COMPLAINT FOR DAMAGES                                    Case No. _____

2.      Defendant METROPOLITAN LIFE INSURANCE COMPANY (hereinafter "Defendant" or "METLIFE") is a corporation duly organized and existing under the laws of the State of New York as a life and disability insurer with its principal place of business located in New York City, New York.  METLIFE is authorized to do business and does significant business in the State of California, County of San Francisco and within this judicial district.

3.      Defendant PACIFIC COAST BANKERS' BANK (hereinafter "Defendant" or "PCBB") is a corporation duly organized and existing under the laws of the State of California with its principal place of business located in San Francisco, California. PCBB is authorized to do business and does significant business in the State of California, County of San Francisco, and within this judicial district.

4.      Defendant TRINET GROUP, INC. (hereinafter "Defendant" or "TRINET") is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business located in San Leandro, California.  TRINET is authorized to do business and does significant business in the State of California, County of San Francisco, and within this judicial district.

5.      Plaintiff is informed and believes and thereon alleges that Defendant PCBB Defendant THE TRINET BANK GROUP SUPPLEMENTAL LIFE INSURANCE PLAN ("the Plan") is a health and welfare benefit plan, which provided supplemental life insurance to certain employees of PCBB.  The Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA").  Plaintiff is informed and believes and thereon alleges that the Plan is a multiple employer welfare arrangement that PCBB agreed to participate in as an employer member.  At all relevant times, METLIFE was the claims fiduciary and a co-plan administrator of the Plan and TRINET was a co-plan administrator and a fiduciary of the Plan.  At all relevant times, PCBB was a co-plan administrator and a fiduciary of the Plan.

**COMPLAINT FOR DAMAGES**                                              Case No. _____

6.     That the true names or capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names and pursuant to section 474 of the California Code of Civil Procedure.  Plaintiff will amend this Complaint to allege their true names and capacities when the same have been ascertained.  Plaintiff is informed and believes and thereon alleges that the Defendants, and each of them, and DOES 1 through 100, inclusive, are residents and citizens of the State of California, and/or qualified to do business in the State of California, and participated in the selling, processing, acquisition, investigation and adjusting of the insurance claim(s) and insurance polic(ies) which are the subject matter of this action.

7.     At all times herein alleged, each Defendant was the agent, employee, and joint venturer of each of the other Defendants, and in doing the things herein described, was acting either as an individual or within the scope of his, her, or its authority of such agent, employee or joint venturer.  The acts and conduct alleged herein of each Defendant were known to and authorized and ratified by each remaining Defendant.

8.     At all relevant times, Carol Echague's ("Decedent" or "Plaintiff's Decedent") was employed by PCBB in its San Francisco office, and as such was enrolled in the Plan, to wit:  a policy of "Group Supplemental Life" insurance issued by METLIFE, Group Policy number 1164937-1-G (hereinafter the "Policy") covering the Decedent, Carol Echague, as a member of the group.  As the payor of benefits and the claims fiduciary of the Plan, METLIFE operates under a structural conflict of interest as defined by *Abatie v. Alta Health and Life Ins. Co.*, 458 F.3d 466 (9thCir. 2006)(en banc) and *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).

9.     The terms of the Policy obligate METLIFE to pay the amount of $222,000 to Plaintiff, as the named beneficiary, immediately on due proof of death of the insured Carol Echague.  The Policy provides that coverage for life insurance benefits ends when

3

COMPLAINT FOR DAMAGES                                    Case No. _____

the insured ceases to be "Actively at Work":

> DATE YOU INSURANCE ENDS:
>
> Your insurance will end on the earliest of:
>
> --------------
> **for Supplemental Life Insurance**
> 4.      the last day of the calendar month in which Your employment ends: Your employment will end if You cease to be Actively at Work in any eligible class, except as stated in the section entitled CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT....

10.      The Policy also contains provisions stating that an insured will continued to have coverage under the Plan if the insured becomes disabled:

> AT YOUR OPTION:  WHEN YOU CEASE ACTIVE WORK DUE TO TOTAL DISABILITY
>
> **If You cease Active Work because You are Totally Disabled,** You may continue Life Insurance for You and Your Dependents for up to 6 months by continuing to pay any premiums you were required to pay for such insurance.  This continuation of Life Insurance will end if you cease to be Totally Disabled or the Group Policy ends.
>
> **Proof Requirements**
>
> You should contact Us as soon as reasonably possible to advise Us that You were disabled on the date You ceased Active Work.  You must send Us Proof that You were Totally Disabled.  As part of such Proof, We may choose a Physician to examine You to verify that You are eligible to continue Life Insurance with premium payment.  If We do so, We will pay for such exam.

11.      The Policy also stated that TRINET and/or PCBB were responsible for paying the premiums under the Plan for employees who ceased Active Work due to an injury or sickness:

> **AT THE POLICYHOLDER'S OPTION**
>
> The Policyholder has elected to continue insurance by paying premiums for employees who cease Active Work in an eligible class for any reasons specified below:
>
> 1.      For the period You cease Active Work in an eligible class due to injury or sickness, up to 2 months;

4

2.      For the period You cease Active Work in an eligible class due to layoff, up to 2 months;

3.      For the period You cease Active Work in an eligible class due to any other Policyholder approved leave of absence, up to 2 months.

At the end of any of the continuation periods listed above, Your insurance will be affected as follows:

--------------------

If You do not resume Active Work in an eligible class at this time, Your employment will be considered to end and Your insurance will end in accordance with the DATE YOUR INSURANCE ENDS subsection of the section entitled ELIGIBILITY PROVISIONS:  INSURANCE FOR YOU.

12.      The Policy also contained an option for the insured to convert the Policy to an individual policy of life insurance upon the end of the insured's employment, provided that METLIFE received a completed conversion application form within 31 days after the date the insured's employment ended.

13.      At all material times herein, Plaintiff and Decedent complied with all the material provisions pertaining to the Plan and Policy and/or compliance was waived by Defendants. On or about January 1, 2011, Decedent became Totally Disabled under the terms of the Policy, as a result of complications due to terminal breast cancer, and was required to take a Leave of Absence from her employment at PCBB.

14.      From January 1, 2011 until Decedent's death on June 23, 2011, both Decedent and Plaintiff repeatedly inquired of TRINET and PCBB on steps needed to be taken to ensure Decedent's continued eligibility for benefits, including life insurance benefits under the Plan. On February 22, 2011, Decedent contacted Nisha Berrios of TRINET, stating "I don't want any insurance to lapse so can you please let me know which ones are needed to continue to pay right after March on my own. These might include any supplemental insurance.  Also, I would like some information on where to send these payments." Despite the repeated inquiries of Decedent and Plaintiff, neither TRINET nor PCBB ever disclosed where Decedent could send premiums for the Plan, nor did TRINET or PCBB make premiums payments under the Plan after March 31, 2011.

5

15.     On or around June 23, 2011, while the Policy was in full force and effect, Decedent died in the City of San Leandro, County of Alameda, State of California.

16.     On or about June 2011, Plaintiff filed with METLIFE a claim for payment of benefits under the terms of the Policy.

17.     On July 13, 2011, METLIFE informed Plaintiff that it would be denying his claim for life insurance benefits under the Policy, asserting that the Policy was cancelled on April 4, 2011 as "the date premium payments for the employee stopped on March 31, 2011." METLIFE asserted that because Decedent had not continue making the requirement premium payments there was no life insurance in effect at the time of her passing."

18.     Plaintiff appealed METLIFE's denial and on August 9, 2011, METLIFE denied Plaintiff's appeal, thus exhausting all pre-suit remedies available to Plaintiff.

19.     As a direct and proximate result of Defendants' actions, Plaintiff suffered damages as outlined below.

20.     As the result of the actions of Defendants, and each of them, Plaintiff has improperly been deprived of life insurance benefits to which he was and is entitled with interest thereon, and has suffered further and severe economic hardship and emotional distress.

21.     As a further result of the actions of Defendants, and each of them, Plaintiff has been forced to engage the services of legal counsel for the purpose of obtaining his insurance benefits.

### First Cause of Action

**(Recovery of Employee Benefits)**
**(Against All Defendants (29 U.S.C. §1132(a)(1)(B))**

22.     Plaintiff refers to Paragraphs 1 through 21, inclusive, of this Complaint, and by reference made, incorporates them as though fully set forth at this point.

6

COMPLAINT FOR DAMAGES                                    Case No. _____

23.     At all relevant times, Plaintiff was insured under the Plan and Defendants were responsible for the administration and handling of Plaintiff's claim for benefits under the Plan.

24.     At all material times herein, Plaintiff has complied with all the material provisions pertaining to the Plan, and/or compliance has been waived or Defendants are estopped from asserting non-compliance.

25.     While the Plan was in full force and effect, Decedent Carol Echague died and Plaintiff became entitled to receive life insurance benefits under the Plan.

26.     Plaintiff duly submitted a claim for benefits.

27.     METLIFE, however, refuses and continues to refuse to make payment to Plaintiff. Plaintiff has appealed this denial and exhausted administrative remedies.

28.     Defendants' refusal to pay Plaintiff violates the terms of the Plan and applicable law. At all material times herein, Defendants, and each of them, failed and refused to honor the Plan. Defendants are liable for all benefits due under the Plan which have been improperly withheld from Plaintiff.

29.     As a proximate result of Defendants' actions, Plaintiff has been deprived of life insurance benefits to which she was and is entitled, and has suffered damage.

### Second Cause of Action

#### (Equitable Relief)
#### (Against TRINET and PCBB (29 U.S.C. §1132(a)(3))

30.     Plaintiff refers to Paragraphs 1 through 29, inclusive, above, and by reference made, incorporates them as though fully set forth at this point.

31.     At all material times herein, Defendants METLIFE, TRINET and PCBB were fiduciaries with respect to their exercise of authority over the management of the Plan, disposition of Plan assets, and administration of the Plan.

7

32.    Plaintiff asserts a breach of fiduciary duty against METLIFE, TRINET and PCBB as an individual Plan participant and on behalf of all other similarly situated participants and beneficiaries of the Plan.

33.    Plaintiff asserts that a claim for benefits due under the Plan does not provide him with an adequate remedy at law in light of METLIFE, TRINET and PCBB's continuing course of conduct in violating the terms of the Plan and applicable law as described below.

34.    METLIFE, TRINET and PCBB were obliged to discharge their duties solely in the interests of beneficiaries and participants for the exclusive purposes of providing beneficiaries and participants benefits, defraying reasonable expenses of the Plan, using all prudent skill and diligence in accordance with the documents and instruments governing the Plan.  Said duties include, but are not limited to, knowing the important terms of the applicable Policy and so informing the Decedent and similarly situated participants when appropriate, paying Decedent's and similarly situated participants' premiums to METLIFE to ensure continued coverage under the terms of the Plan, and promptly notifying the Decedent (or Plaintiff) and similarly situated participants or beneficiaries of any conversion rights and reasons for the exercise of conversion rights.

35.    Plaintiff's Decedent and similarly situated participants timely remitted the premiums sums for the Plan prior to becoming totally disabled and relied on the skill, knowledge, and expertise of Defendants, and each of them, and relied on their representations.  As a result of TRINET and PCBB's role as co-plan administrators of the Plan, both Decedent and TRINET and PCBB knew and understood that Decedent and similarly situated participants would rely on and TRINET and PCBB would provide such services and expertise to Decedent and similarly situated participants.

36.    At all material times, METLIFE, PCBB and TRINET violated these duties by, *inter alia*, the following:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

   A. Consciously and unreasonably and without justification failing to provide accurate and complete disclosure of information to Decedent and similarly situated participants, and/or failed to advise Decedent and similarly situated participants of the important policy provisions and considerations which permitted METLIFE to deny Plaintiff's life insurance claim and the claims of similarly situated beneficiaries.  Defendants' knew or should have known that the above-mentioned representations and/or nondisclosures were false, and each of them, had no intention of providing life insurance benefits to Plaintiff's Decedent and similarly situated participants as a result of death.

   B. Misrepresenting to Plaintiff and Decedent and similarly situated participants the appropriate steps necessary to maximize plan participants' benefits under the plans, including the supplemental life insurance plan.

   C. Consciously and unreasonably and without justification failing to provide to METLIFE the premiums required to continue coverage under the Policy, upon their knowledge that Plaintiff's Decedent and similarly situated participants were "Totally Disabled" under the terms of the Policy and the Plan.

   D. Failing to make good faith attempts to evaluate a prompt, fair and equitable settlement of Plaintiff's claims and the claims of similarly situated beneficiaries;

   E. Failing to acknowledge and act reasonably upon communication with respects to the Plaintiff's claims and the claims of similarly situated beneficiaries arising under the Policy;

9

F.     Failing to pay benefits under said Policy to Plaintiff and similarly situated beneficiaries when the Defendants knew Plaintiff was entitled to said payments under the terms of the contract of insurance;

G.     Failing to adhere to reasonable standards for the prompt investigation and processing of Plaintiff's claim and the claims of similarly situated beneficiaries arising under the Policy;

H.     Failing to affirm or deny coverage of Plaintiff's claims and the claims of similarly situated beneficiaries within a reasonable time after proof of loss requirements had been completed and submitted by Plaintiff;

I.     Not attempting in good faith to effectuate prompt, fair and equitable settlement of Plaintiff's claim and the claims of similarly situated beneficiaries once liability had become reasonably clear;

J.     Delaying payments to Plaintiff and similarly situated beneficiaries knowing Plaintiff's claim and claims of similarly situated beneficiaries for benefits under said Policy to be valid;

K.     Withholding payments from Plaintiff knowing Plaintiff's claim and claims of similarly situated beneficiaries for benefits under said contract of insurance to be valid;

L.     Failing to reasonably and promptly investigate and process Plaintiff's claims and claims of similarly situated beneficiaries for benefits under said Policy;

M.     Failing to provide a reasonable explanation of the basis relied on in the Policy, in relation to the facts or applicable law for the denial of the claim; and

N.     Failing to give the interests of Plaintiff and similarly situated beneficiaries, at least as much consideration as it gave its own interests.

10

37.     Plaintiff and Plaintiff's Decedent, and similarly situated participants and beneficiaries were justified in relying on the representations and actions of Defendants. Plaintiff's Decedent and similarly situated participants reposed trust and confidence in the knowledge, integrity and fidelity of Defendants, and each of them, and Plaintiff and Plaintiff's Decedent and similarly situated participants and beneficiaries relied on the good faith and integrity of Defendants, and each of them.  As a result of the Plaintiff and Plaintiff's Decedent's, similarly situated participants and beneficiaries' confidence, trust and faith in the knowledge and integrity of the Defendants, Plaintiff and Plaintiff's Decedent, similarly situated participants and beneficiaries were justified in relying on the representations and actions of the Defendants, and thereby refrained from providing the premiums and/or advising METLIFE that Decedent and similarly situated participants were "Totally Disabled" under the terms of the Policy.

38.     Plaintiff further requests "appropriate equitable relief" as set forth in *CIGNA v. Corp. v. Amara*, 131 S.Ct. 1866 (2011), for Defendants' breaches of fiduciary duties, either through equitable surcharge (in an amount equal to Plaintiff's loss due to the TRINET and PCBB's representations and/or nondisclosures regarding the conditions to ensure Decedent's continued coverage under the Plan), equitable reformation (by rewriting and/or modifying the Plan in order to permit Decedent's eligibility for life insurance benefits under the Plan at the time of her death) or equitable estoppel (by estopping METLIFE, TRINET and/or PCBB from relying on the failure to pay premiums after April 1, 2011 as a basis for denying life insurance benefits under the Plan).

39.     Plaintiff further requests judgment permanently enjoining METLIFE, TRINET or PCBB from ever again serving as a fiduciary with respect to the Plan, together with attorneys' fees and costs.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

11

COMPLAINT FOR DAMAGES                                    Case No. _____

1.     For compensatory and consequential damages according to proof at trial;

2.     For general damages according to proof;

3.     For a judicial declaration that METLIFE is obligated to pay the lump sum life insurance benefit of $222,000, together with interest at the legal rate from the date the claim was made and until paid, all in a sum according to proof at the time of trial;

4.     For equitable and injunctive relief as set forth above;

5.     For reasonable attorneys' fees incurred herein;

6.     For prejudgment interest;

7.     For costs of suit herein; and

8.     For such other and further relief as the Court may deem just and proper.


Dated: February 9, 2012          PILLSBURY & LEVINSON, LLP

By: _____
     Rebecca Grey
     Brian H. Kim
     Attorneys for Plaintiff,
     ERNIE ECHAGUE

COMPLAINT FOR DAMAGES         Case No. _____