UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ERNIE ECHAGUE,

    Plaintiff,

v.

METROPOLITAN LIFE INSURANCE, et al.,

    Defendants.

_____/

No. C 12-0640 PJH

**ORDER RE STANDARD OF REVIEW AND SCOPE OF DISCOVERY**

Before the court are defendants' motion to establish a standard of review and plaintiff's motion for discovery. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby rules as follows.

1.    Standard of review

When a Plan administrator's denial of benefits is challenged under ERISA, the default rule holds that court review of the administrator's denial is de novo, unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan. See Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006). Analysis of this issue depends on the wording of the Plan itself. The Ninth Circuit in Abatie held that "for a Plan to alter the standard of review from the default of de novo to the more lenient abuse of discretion, the Plan must unambiguously provide discretion to the administrator." Id. at 964.

In Abatie, Plan at issue stated that "[t]he responsibility for full and final determinations of eligibility for benefits; interpretation of terms; [and] determinations of claims . . . rests exclusively with Plan administrator." See 458 F.3d at 963. Indeed, in Abatie, the Ninth Circuit held that Plan language "granting the power to interpret Plan terms and to make final benefits determinations confers discretion on the Plan administrator." Id.

1

A "structural conflict of interest" exists where an insurer acts "as both the Plan administrator and the funding source for benefits." See Abatie, 458 F.3d at 965. In deciding whether such conflicts are sufficient to alter the standard of review from abuse of discretion to de novo review, the Abatie court rejected its prior approach, used in Atwood v. Newmont Gold Co., in which the Ninth Circuit employed a burden shifting approach in evaluating conflicts to determine which standard of review applies. Instead, the Abatie court adopted what it deemed the "Firestone approach" (named after the Supreme Court's decision in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989)). Under this approach, the Ninth Circuit held that abuse of discretion review is required "whenever an ERISA Plan grants discretion to the Plan administrator," but the court noted that this abuse of discretion review is to be informed "by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." See 458 F.3d at 967.

In other words, abuse of discretion review is mandated once the court deems that discretionary authority is granted in the Plan administrator. Rather than weighing – as before – the conflict of interest issue to determine whether abuse of discretion review should be discarded in favor of de novo review, the court must instead now weigh the conflict of interest "as a factor in abuse of discretion review", requiring a "case-by-case" balance. Id. at 968. This means that the conflict of interest issue now comes into play in the court's decision of "how much or how little to credit the Plan administrator's reason for denying insurance coverage" – i.e., the merits of the case. Id.

In this case, the Plan documents do confer discretionary authority on the plan administrator. The Plan states that "operation of the plan shall be under the supervision of the administrator," which has the power to "interpret the plan" and "to decide all questions concerning the plan and eligibility of any person." See Dkt. 37-2, Ex. A at DT001150. The summary plan description ("SPD") further states that "[t]he plan administrator has full discretionary authority to interpret the plan," and that "benefits will only be paid in the event that the plan administrator (or the plan administrator's delegate) determines in its discretion

that the claimant is entitled to them." See Dkt. 37-2, Ex. B at DT 000360. Finally, the documents relating to the two life insurance plans at issue state that "the plan administrator and other plan fiduciaries shall have discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to plan benefits in accordance with the plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation was arbitrary and capricious." See Dkt. 37-2, Ex. C at DT000195, Ex. D at DT000130.

Plaintiff argues that the grant of discretionary authority is effective only as to TriNet, as the plan administrator, and not as to MetLife, who is not specifically named in the plan documents. While plaintiff is correct that MetLife is not named anywhere in the plan documents, plaintiff has not presented the court with any persuasive authority establishing that MetLife needed to be named in a manner more specific than the SPD's reference to "the plan administrator's delegate." Plaintiff points to a magistrate judge's report and recommendation for the proposition that a party needs to be specifically named in order to have discretionary authority, but as defendants point out, this reasoning was not adopted by the district court. See Mangum v. Metropolitan Life Ins. Co., 2010 WL 5776057 (D. Or. Sept. 29, 2010) (report and recommendation); 2011 WL 466814 (D. Or. Feb. 4, 2011) (district court opinion).

Thus, because the court finds that the plan documents granted discretionary authority to TriNet, who then delegated that authority to MetLife, the court finds that plaintiff's first cause of action for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B) is governed by the "abuse of discretion" standard. However, because MetLife is acting as both the discretionary decision-maker and the funding source here, the court finds that there is a "structural conflict of interest" (as articulated in Abatie), meaning that the court's review must be informed "by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." See 458 F.3d at 967.

While plaintiff's first cause of action is to be governed by the "abuse of discretion" standard, the court does not find that the same standard is applicable to plaintiff's second

3

cause of action, for equitable relief under 29 U.S.C. § 1132(a)(3). The critical difference here is that plaintiff's second cause of action does not merely seek review of defendants' actual decision to deny benefits. Instead, the complaint alleges that defendants breached their fiduciary duty through a number of different actions, including "misrepresenting and/or failing to disclose . . . the appropriate steps necessary to maximize plan participants' benefits under the plans," "consciously and unreasonably and without justification failing to provide to MetLife the premiums required to continue coverage under the group policies and the plans," and "failing to acknowledge and act reasonably upon communication with respect to the plaintiff's claims." Dkt. 13 at 9-10. To be clear, plaintiff's second cause of action also includes allegations related to MetLife's "fail[ure] to pay benefits under [] group policies to plaintiff," and to the extent that plaintiff challenges MetLife's actual decision to deny benefits, the "abuse of discretion" standard will apply, for the reasons set forth above. However, to the extent that plaintiff's second cause of action is based on conduct other than MetLife's decision to deny benefits, those claims will be governed by a "de novo" standard.

For instance, the complaint alleges that certain defendants (presumably TriNet and/or PCBB) made misrepresentations to plaintiff regarding the state of his wife's insurance coverage. Such alleged bad acts would not fall under any type of discretionary authority granted by the plan documents, meaning that there is no exercise of discretion to which the court should defer. Thus, the default "de novo" standard of review governs. Again, to be clear, to the extent that plaintiff's second cause of action challenges MetLife's ultimate decision to deny benefits, the "abuse of discretion" standard applies, because MetLife was granted discretionary authority to grant or deny benefits by the plan documents. But to the extent that plaintiff's second cause of action challenges other behavior of defendants, the "discretionary authority" analysis is inapplicable, and the "de novo" standard of review applies.

2.	Scope of discovery

In general, the court's findings as to the standard of review dictate the proper scope of discovery. In Abatie, the court held that where abuse of discretion review is applied, the court is limited to matters in the administrative record only, and discovery is not permissible. 358 F.3d at 970. However, in cases involving a structural conflict of interest, "the court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest." Id.

In this case, plaintiff's first cause of action is governed by the "abuse of discretion" standard, which would normally preclude discovery. However, because MetLife was acting as both the discretionary decision-maker and the funding source, this case does involve the type of structural conflict of interest discussed in Abatie, and plaintiff may take discovery related to the nature, extent, and effect of such conflict on the decision-making process. The court does not address the specific discovery requests mentioned in plaintiff's motion, and instead articulates these general principles regarding the scope of discovery and orders the parties to meet and confer with these guidelines in mind.

As to plaintiff's second cause of action, again, the court's findings regarding the relevant standard of review determine the appropriate scope of discovery. To the extent that plaintiff's second cause of action challenges MetLife's ultimate decision to deny benefits, plaintiff shall be entitled to only limited discovery related to MetLife's structural conflict as stated above. To the extent that plaintiff's second cause of action relates to other conduct by defendants, plaintiff shall be entitled to discovery regarding the substance of those actual claims. For instance, where plaintiff challenges defendants' alleged "fail[ure] to provide to MetLife the premiums required to continue coverage under the group policies and the plans," plaintiff is entitled to discovery regarding that alleged failure to pay premiums. However, while the complaint lists fifteen types of conduct that are implicated by plaintiff's second cause of action, the complaint is not clear as to which defendant(s) are accused of each type of conduct. See Dkt. 13 at 9-11. The lack of clarity in the complaint

5

makes it impossible to determine the discovery obligations of each defendant. To address this problem, plaintiff is directed to file a second amended complaint, which shall specify which categories of alleged conduct are applicable to which defendant. After that, the parties can engage in a more meaningful meet-and-confer process to determine the proper scope of discovery for each defendant. Plaintiff shall file the second amended complaint by February 22, 2013, and defendants shall file a response within 14 days of its filing.

**IT IS SO ORDERED**.

Dated: February 8, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge