United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNIE ECHAGUE,<br><br>          Plaintiff,<br><br>    v.<br><br>METROPOLITAN LIFE INSURANCE<br>COMPANY, et al.,<br><br>          Defendants. | Case No.  12-cv-00640-WHO<br><br>**ORDER ON DISCOVERY DISPUTE**<br>Re: Dkt. No. 85 |

Currently before the Court is plaintiff's motion to compel defendants to produce various categories of discovery.  Directly relevant to the determination of this dispute is Judge Hamilton's February 8, 2013 Order (Docket No. 62).  In that Order Judge Hamilton determined that the standard of review applicable to this case – where plaintiff challenges defendant MetLife's denial of payment of life insurance benefits upon his wife Carole Echague's death – is "abuse of discretion."   However, because of a structural conflict – as MetLife funds the Plan but also determines entitlement – that review will be informed by the "nature, extent, and effect on the decision-making process" of any conflict that may appear in the record.  *Id*. at 3.  As such, the Court allowed plaintiff to take discovery limited to the "nature, extent, and effect of such conflict" in MetLife's the decision-making process.  *Id*. at 5.  Judge Hamilton also noted that plaintiff was entitled to broader discovery in support of the breach of fiduciary duty claims that defendants' misrepresented the status of the decedent's insurance coverage.

Plaintiff propounded a series of requests for production and Rule 30(b)(6) deposition notices to each of the three defendants, and plaintiff now challenges defendants' responses and/or objections.  The Court will address each in turn in light of Judge Hamilton's prior order.

**RFP No. 1 to TriNet**

This request seeks documents pertaining to the decedent's right to continuation of group coverage.  TriNet (the co-Plan Administrator according to plaintiff) responds that it has already produced the requested documents.

The Court ORDERS TriNet to provide a verified written response or a declaration under penalty of perjury from a witness with personal knowledge confirming that TriNet has provided all responsive documents regarding the decedent's right to continuation of group coverage.

**RFP No. 6 to TriNet/RFP No. 1 to PCBB**

These requests seek documents reflecting the relationship and agreement by and between MetLife (the Plan Insurer and co-Plan Administrator according to plaintiff), TriNet and/or PCBB (the decedent's former employer and Plan Sponsor); specifically the contracts among the parties from 2008 to the present and documents regarding the termination of PCBB's business relationship with TriNet.  Defendants argue that contracts between TriNet and PCBB or TriNet and MetLife are irrelevant to MetLife's conflict of interest and that plaintiff already has the contract between PCBB and TriNet regarding the handling of PCBB employee benefits as well as the carrier certificate between TriNet and MetLife which, according to defendants, lays out the relationship between the entities.

The Court finds that the contracts between the parties are not only relevant to the structural conflict issue but also to the breach of fiduciary duty claim and should be produced.  Defendants shall produce all contracts between the parties from 2008 to the present as well as documents regarding the termination of the relationship between TriNet and PCBB.

**RFP No. 4 to PCBB**

This request seeks guidelines pertaining to the payment, acceptance, and processing of premium payments.  PCBB argues that it is undisputed that no life insurance premiums were paid on or after March 31, 2011 and, therefore, the documents sought are irrelevant.  PCBB also notes that plaintiff already has the contract between PCBB and TriNet regarding the payment of premiums for PCBB employee benefits.

The Court finds that the documents at issue are potentially relevant to plaintiff's claims for

United States District Court
Northern District of California

breach of fiduciary duty and should be produced.

**RFP No. 3 to MetLife**

This request asks MetLife to produce the "complete administrative record," regarding the denial of the life insurance benefits claim.  Plaintiff argues that the complete administrative record has not been produced by MetLife because certain documents are absent, including correspondence between the Echagues and the MetLife, TriNet and PCBB regarding the Echagues' efforts to maintain the life insurance coverage.  MetLife responds that under Ninth Circuit law the administrative record consists of the "'the papers the insurer had when it denied the claim'" and that it has no unproduced, responsive documents.  Letter Br. at 5 (quoting *Montour v. Hartford Life & Accident Ins. Co*., 588 F.3d 623, 632 n.4 (9th Cir. 2009) (quoting *Kearney v. Standard Ins. Co*., 175 F.3d 1084, 1086 (9th Cir. 1999))).

The Court ORDERS MetLife to provide a verified written response or a declaration under penalty of perjury from a witness with personal knowledge confirming that MetLife has produced the entire administrative record, including all documents that MetLife had when it denied plaintiff's claim.

**RFP Nos. 1, 2, 4 to MetLife**

These requests seek MetLife's claims manuals and guidelines for processing claims, as well as all guidelines MetLife provided to TriNet and PCBB pertaining to TriNet and PCBB's roles in the administration, management and disposition of assets pursuant to the life insurance policy at issue.  These documents are relevant, according to plaintiff, to the issue of MetLife's conflict of interest in both funding and deciding whether to award or deny benefits.  Plaintiff argues that this type of discovery is routinely provided in structural conflict ERISA cases.  *See e.g., Zewdu v. Citigroup Long Term Disability Plan,* 264 F.R.D. 622 (N.D. Cal. 2010) (requiring production of claims manuals, procedures and other documents used by MetLife in processing plaintiff's claim).

MetLife responds that it does not have any documents regarding guidelines MetLife provided to TriNet and/or PCBB.  As such, the Court ORDERS MetLife to provide a verified written response or a declaration under penalty of perjury from a witness with personal knowledge

United States District Court
Northern District of California

confirming that no responsive documents exist.

With respect to MetLife's internal claims manuals and guidelines, MetLife argues those manuals are not relevant and production of them is not warranted without a protective order because the documents contain confidential and proprietary information. The Court finds that the information sought by plaintiff is relevant and should be produced for the period from 2008 to the present. That production should be made pursuant to a Protective Order. If the parties cannot agree to a Protective Order within five days of the date of this Order, that production will be governed by the Northern District of California's model "Stipulated Protective Order for Standard Litigation."

**MetLife Rule 30(b)(6) Notice**

Plaintiff seeks to depose a MetLife Rule 30(b)(6) witness on the following topics:

(1) the guidelines provided by MetLife to TriNet and/or PCBB regarding the handling of the group life insurance policies, (2) MetLife's oversight of TriNet, (3) MetLife's efforts to comply with ERISA and its own fiduciary duties in its administration of Decedent's claim, (4) MetLife's efforts to engage in a full and fair review of Plaintiff's claim, (5) MetLife's efforts to inoculate itself from the biasing effects of its conflict of interest, (6) the conversion rights available to its group life insurance policyholders, (7) its investigation, analysis, and determination made on plaintiff's claims, (8) its policies with respect to the creation of the administrative record in this matter, and (9) the manner in which it processes premium payments on the life insurance policies at issue in this matter.

Letter Br. at 6.

MetLife objects to topic 1, on the grounds that MetLife doesn't have responsive documents or information on this topic. As such, the Court finds that MetLife does not need to produce a witness on this topic. However, plaintiff is not prohibited from asking questions on this topic (if he chooses to) during any Rule 30(b)(6) deposition.

As to topic 2 MetLife contends that there is no foundation for the proposition that MetLife, as the claims administrator, had a duty to monitor or oversee TriNet, the Plan Administrator. However, the Court finds that to the extent MetLife did monitor, advise, or oversee steps TriNet took with respect to TriNet's fiduciary duties, that testimony is relevant. If there is no such testimony (because MetLife did not oversee, advise, or monitor TriNet), then MetLife does not have to produce a witness on that topic. However, plaintiff is not prohibited from asking

1    questions on this topic (if he chooses to) during any Rule 30(b)(6) deposition.

2         MetLife argues that category 3 seeks discovery to attack the merits of the claim decision

3    which is impermissible.  MetLife also argues that while it administered claims, it was not the

4    ERISA Plan Administrator, therefore MetLife was not responsible for providing "plan

5    documents."  The Court finds that plaintiff is entitled to a witness as to MetLife's administration

6    of the claim and its compliance with ERISA's requirements in light of plaintiff's allegation that

7    MetLife violated its fiduciary duties to the decedent.

8         As to Categories 4 and 7, MetLife argues the discovery goes to the merits of the benefits

9    determination which is impermissible.  *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955,

10   970 (9th Cir. 2006) ("in general, a district court may review only the administrative record when

11   considering whether the plan administrator abused its discretion").  However, where there is a

12   showing of conflict, as Judge Hamilton determined there was here, discovery into the claims

13   review process is relevant to determine whether the "decision-making was tainted by improper

14   motives."  *Sizemore v. Pac. Gas & Elec. Ret. Plan*, C 13-00169 WHA, 2013 WL 3242248, *5-6

15   (N.D. Cal. June 25, 2013) (allowing discovery into "the claim review process [and] the adequacy

16   of defendants' investigation of plaintiff's claim"); *see also Stout v. Hartford Life & Acc. Ins. Co.*,

17   11-6186 CW JSC, 2012 WL 4464605, *4 (N.D. Cal. Sept. 25, 2012) (requiring production of

18   claim notes).  MetLife does not explain why, given the context of this case, testimony about its

19   claim determination is irrelevant to the conflict issue.  MetLife must produce a witness on these

20   topics.

21        As to Category 6,[1] MetLife objects because any information it has regarding conversion

22   rights available to its group life insurance policyholders will be in the administrative record.  The

23   fact that MetLife may have produced documents for the administrative record, does not mean the

24   subject is an improper Rule 30(b)(6) topic.  MetLife must produce a witness for this topic.

25        As to Category 8, MetLife argues that the topic is ambiguous and has nothing to do with

26   the structural conflict issue.  However, MetLife's efforts to gather information for the

27   _____

28   [1] MetLife points out that plaintiff did not meet and confer on topic 5.  Docket No. 85 at 7, n.5.  As
     such, the Court will not address topic 5.

1    administrative record in this case is an appropriate topic for discovery in light of the allegations of

2    structural conflict and breach of fiduciary duty.  Moreover, if MetLife does not have information

3    regarding why letters regarding the Echague's efforts to secure information about their coverage

4    were not included in the administrative record, a MetLife witness can testify as to that fact.

5            As to Category 9, MetLife argues that because it is undisputed that premiums were not

6    paid after March 31, 2011, the requested testimony is irrelevant.  However, in light of the breach

7    of fiduciary duty claim, there may be some relevance to MetLife's practices regarding payment

8    processing and a witness should be produced on this topic.

9            **TriNet Rule 30(b)(6) Notice**

10            Plaintiff seeks to compel TriNet to produce witnesses on the following topics:  (1) the

11    contents of the administrative record, (2) the guidelines pertaining to the submission of life

12    insurance premiums for PCBB's group benefit plans, (3) guidelines pertaining to consumer notice

13    requirements pursuant to COBRA, FMLA, and CFRA, applicable to PCBB's group benefit plans

14    (4) guidelines pertaining to submission of life insurance premiums on behalf of individuals on

15    leave, (5) procedures for supplying plan documents to insureds and beneficiaries, (6)

16    communications with PCBB and/or MetLife regarding Decedent, (7) conversion rights related to

17    MetLife coverage that terminates or is reduced, (8) TriNet's satisfaction of ERISA and its own

18    fiduciary duties, (9) the cessation of TriNet's business relationship with PCBB.  Plaintiff argues he

19    must be allowed to inquire about "incentives" affecting TriNet in its role as the "gatekeeper"

20    controlling the decedent's life insurance coverage and as a party responsible for providing

21    documents for the administrative record.  The discovery is also aimed at uncovering information

22    regarding MetLife's structural conflict.

23            As to Category 1, TriNet argues that because it was MetLife's duty to compile the

24    administrative record, plaintiff's attempt to seek discovery from TriNet is improper.   The Court

25    finds that to the extent TriNet has a witness who is knowledgeable about documents that are in or

26    should be in the administrative record compiled by MetLife, TriNet should produce a witness on

27    that topic.

28            As to Categories 2 and 4, TriNet argues that because no payments were made on

United States District Court
Northern District of California

decedent's policy after March 31, 2011, the testimony is irrelevant.  However, the Court finds the testimony is relevant to plaintiff's breach of fiduciary duty claims and TriNet should produce a witness on these topics.

As to Category 3, TriNet argues that the notice guidelines for COBRA, FMLA and CFRA are irrelevant as to whether notice was adequately provided under ERISA.  However, explanation of notice procedures employed under other statutes and regulatory schemes could be relevant to what sort of notice was required under ERISA.  The Court finds this topic is relevant to plaintiff's breach of fiduciary duty claims and TriNet should produce a witness on this topic.

As to Category 5, TriNet argues that as the decedent acknowledged receipt of the summary plan description and "other documents," testimony on this topic is irrelevant.  However, the decedent may not have received all "plan documents." TriNet's procedures for providing plan documents are relevant to plaintiff's breach of fiduciary duty claims and TriNet should produce a witness on this topic.

As to Category 6, TriNet objects to this discovery as irrelevant, overbroad, and vague.  The Court finds that the request is specifically defined and relevant to plaintiff's breach of fiduciary duty claims.  TriNet should produce a witness on this topic.

As to Category 7, TriNet argues the information is included in the Plan documents and testimony cannot alter the rights conferred by the Plan.  However, testimony as to how TriNet implements the conversion rights governed by the Plan is relevant.  TriNet should produce a witness on this topic.

As to Category 8, TriNet argues whether it "satisfied" its ERISA duties is a question for the Court, and evidence of that satisfaction is in documents in plaintiff's possession, including notices TriNet provided to the decedent.  The testimony sought is relevant and TriNet should produce a witness on this topic.

As to Category 9, TriNet (and PCBB) argue that evidence regarding the cessation of the relationship between TriNet and PCBB is not relevant to plaintiff's claims.  Although plaintiff alleges that TriNet and PCBB's relationship "may" have been terminated because of TriNet's handling of the decedent's claim, if TriNet (and PCBB) submit declarations under penalty of

1   perjury from a knowledgeable person that the termination of the relationship between TriNet and

2   PCBB had nothing to do with the handling of decedent's policy and nothing to do with plaintiff's

3   claim, TriNet and PCBB need not produce a deposition witness on this topic.

4         **PCBB Rule 30(b)(6) Notice**

5         Plaintiff seeks to depose PCBB on various topics that mirror his document requests to

6   verify that all responsive documents have been produced.  Plaintiff did not meet and confer as to

7   Categories 2 and 3, therefore only categories 1, 4 and 5 remain at issue.  As to Category 1,

8   regarding the reasons for the termination of TriNet and PCBB's relationship, the Court has

9   addressed that issue above.

10         As to Category 4, plaintiff seeks testimony as to the procedures and practices employed by

11   PCBB for payment of premiums on its employee benefit plans.  PCBB argues that because there is

12   no dispute that no life insurance premiums were paid after March 31, 2011, this testimony is

13   irrelevant.  However, the Court finds the testimony is relevant to plaintiff's breach of fiduciary

14   duty claims and PCBB should produce a witness on this topic.

15         As to Category 5, plaintiff seeks testimony regarding communications between PCBB,

16   MetLife and TriNet regarding the decedent's policy and plaintiff's claim.  While PCBB argues the

17   testimony is irrelevant, the Court finds it is relevant to plaintiff's breach of fiduciary duties claims

18   and PCBB should produce a witness on this topic.

19

20         **Plaintiff's Proposed Third Amended Complaint**

21         Finally, plaintiff argues that he "believes" many documents have been excluded from the

22   administrative record, including the actual governing plan document and correspondence between

23   TriNet, PCBB and the Echagues regarding their attempts to maintain the decedent's benefits.  As

24   such, plaintiff "intends to seek leave" to file a third amended complaint, adding a cause of action

25   for failure to produce documents pursuant to 29 U.S.C. § 1024(b)(4) and § 1132(c).  TriNet argues

26   that the statutes plaintiff relies on do not give rise to that sort of claim, and TriNet argues that

27   MetLife compiled and produced a complete administrative record.

28         The Court will not rule on a request for leave to file an amended complaint as part of

United States District Court
Northern District of California

8

resolving the parties' discovery dispute.  Instead, if plaintiff wants leave to file an amended

complaint he should file a formal, noticed motion seeking to do so.  Any such motion shall be

filed within 30 days after the completion of the discovery ordered above.

**IT IS SO ORDERED**.

Dated: October 1, 2013



_____

WILLIAM H. ORRICK
United States District Judge

United States District Court
Northern District of California