# Exhibit 1

Rebecca Grey  (State Bar No. 194940)
THE GREY LAW FIRM, P.C.
235 Montgomery Street, Suite 1101
San Francisco, California  94104
Telephone: (415) 262-9926
Facsimile: (415) 262-9981
E-mail:  grey@greylaw-sf.com

Attorney for Plaintiff
ERNIE ECHAGUE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNIE ECHAGUE, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, TRINET GROUP, INC., PACIFIC COAST BANKERS' BANK, THE TRINET GROUP, INC. GROUP BASIC LIFE INSURANCE PLAN, THE TRINET GROUP, INC. GROUP SUPPLEMENTAL LIFE INSURANCE PLAN,<br><br>        Defendants. | Case No. 3:12-cv-00640-WHO<br><br>**[PROPOSED] THIRD AMENDED COMPLAINT FOR DAMAGES FOR RECOVERY OF EMPLOYEE BENEFITS (29 U.S.C. §1132(A)(1)(B); EQUITABLE RELIEF (29 U.S.C. §1132(a)(3)); FAILURE TO PRODUCE DOCUMENTS (29 U.S.C. § 1132(c)(1))** |

COMES NOW, Plaintiff ERNIE ECHAGUE ("Plaintiff") and complains of the Defendants, and each of them, and on information and belief, alleges as follows:

## GENERAL ALLEGATIONS

1.    Plaintiff ERNIE ECHAGUE ("Plaintiff") was, and now is, a resident of the City of San Leandro, County of Alameda, State of California, and is a named beneficiary under the Policies of insurance in issue.

///

-1-

THIRD AMENDED COMPLAINT FOR DAMAGES FOR RECOVERY OF EMPLOYEE    Case No. 3:12-cv-00640-WHO
BENEFITS (29 U.S.C. §1132(A)(1)(B); EQUITABLE RELIEF (29 U.S.C. §1132(a)(3));
FAILURE TO PRODUCE DOCUMENTS (29 U.S.C. § 1132(c)(1))

2.     Defendant METROPOLITAN LIFE INSURANCE COMPANY (hereinafter "Defendant" or "METLIFE") is a corporation duly organized and existing under the laws of the State of New York as a life and disability insurer with its principal place of business located in New York City, New York. METLIFE is authorized to do business and does significant business in the State of California, County of San Francisco and within this judicial district.

3.     Defendant PACIFIC COAST BANKERS' BANK (hereinafter "Defendant" or "PCBB") is a corporation duly organized and existing under the laws of the State of California with its principal place of business located in San Francisco, California. PCBB is authorized to do business and does significant business in the State of California, County of San Francisco and within this judicial district.

4.     Defendant TRINET GROUP, INC. (hereinafter "Defendant" or "TRINET") is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business located in San Leandro, California. TRINET is authorized to do business and does significant business in the State of California, County of San Francisco and within this judicial district.

5.     Plaintiff is informed and believes and thereon alleges that Defendant THE TRINET BANK GROUP, INC. BASIC LIFE INSURANCE PLAN ("the Basic Life Plan") is a health and welfare benefit plan, which provided term life insurance to certain employees of PCBB. Plaintiff is informed and believes and thereon alleges that Defendant THE TRINET BANK GROUP SUPPLEMENTAL LIFE INSURANCE PLAN ("the Supplemental Life Plan") is a health and welfare benefit plan, which provided supplemental life insurance to certain employees of PCBB. When referred to collectively, the Basic Life Plan and the Supplemental Life Plan shall be referred to herein as the "Plans". The Plans are employee welfare benefit plans governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"). Plaintiff is informed and believes and thereon alleges that the Plans are multiple employer welfare arrangements that PCBB agreed to participate in as an employer member. At all relevant times, METLIFE was the claims fiduciary and a co-plan administrator of the Plans and TRINET was a co-plan administrator and a fiduciary of the Plans. At all relevant times, PCBB was a co-plan administrator and a fiduciary of the Plans.

6.     At all times herein alleged, each Defendant was the agent, employee, and joint venturer of each of the other Defendants, and in doing the things herein described, was acting either as an individual or

THIRD AMENDED COMPLAINT FOR DAMAGES FOR RECOVERY OF EMPLOYEE     Case No. 3:12-cv-OO64O-WHO
BENEFITS (29 U.S.C. §1132(A)(1)(B); EQUITABLE RELIEF (29 U.S.C. §1132(a)(3));
FAILURE TO PRODUCE DOCUMENTS (29 U.S.C. § 1132(c)(1))

within the scope of his, her, or its authority of such agent, employee or joint venturer. The acts and conduct alleged herein of each Defendant were known to and authorized and ratified by each remaining Defendant.

7. At all relevant times, Carol Echague's ("Decedent" or "Plaintiff's Decedent") was employed by PCBB in its San Francisco office, and as such was enrolled in the Plans, to wit: a policy of "Group Term Life" insurance issued by METLIFE, Group Policy number 1164937-1-G (hereinafter the "Group Term Life Policy") covering the Decedent, Carol Echague, as a member of the group; and a policy of "Group Supplemental Life" insurance issued by METLIFE, Group Policy number 1164937-1-G (hereinafter the "Group Supplemental Life Policy") covering the Decedent as a member of the group. When referred to collectively, the Group Term Life Policy and the Group Supplemental Life Policy shall be referred to herein as the "Group Policies". As the payor of benefits and the claims fiduciary of the Plans and the Group Policies, METLIFE operates under a structural conflict of interest as defined by Abatie v. Alta Health and Life Ins. Co., 458 F.3d 466 (9thCir. 2006)(en banc) and Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008).

8. The terms of the Group Term Life Policy obligates METLIFE to pay the total amount of $222,000 to Plaintiff, as the named beneficiary, immediately on due proof of death of the insured Decedent. Similarly, the Group Supplemental Life Policy obligates METLIFE to pay the total amount of $222,000 to Plaintiff, as the named beneficiary, immediately on due proof of death of the insured Decedent. The Group Policies both provide that coverage for life insurance benefits ends when the insured ceases to be "Actively at Work":

DATE YOUR INSURANCE ENDS:

> Your insurance will end on the earliest of:
> -------------
> 4. the last day of the calendar month in which Your employment ends: Your employment will end if You cease to be Actively at Work in any eligible class, except as stated in the section entitled CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT....

9. The CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT in the Group Supplemental Life Policy states that an insured will continued to have coverage under the Supplemental Life Plan if the insured becomes disabled:

> AT YOUR OPTION: WHEN YOU CEASE ACTIVE WORK DUE TO TOTAL DISABILITY

-3-

If You cease Active Work because You are Totally Disabled, You may continue Life Insurance for You and Your Dependents for up to 6 months by continuing to pay any premiums you were required to pay for such insurance. This continuation of Life Insurance will end if you cease to be Totally Disabled or the Group Policy ends.

Proof Requirements

You should contact Us as soon as reasonably possible to advise Us that You were disabled on the date You ceased Active Work. You must send Us Proof that You were Totally Disabled. As part of such Proof, We may choose a Physician to examine You to verify that You are eligible to continue Life Insurance with premium payment. If We do so, We will pay for such exam.

10.     The Group Life Policy and the Group Supplemental Life Policy also state that TRINET and/or PCBB were responsible for paying the premiums under the Plan for employees who ceased Active Work due to an injury or sickness:

AT THE POLICYHOLDER'S OPTION

The Policyholder has elected to continue insurance by paying premiums for employees who cease Active Work in an eligible class for any reasons specified below:

1.     For the period You cease Active Work in an eligible class due to injury or sickness, up to 2 months;

2.     For the period You cease Active Work in an eligible class due to layoff, up to 2 months;

3.     For the period You cease Active Work in an eligible class due to any other Policyholder approved leave of absence, up to 2 months.

At the end of any of the continuation periods listed above, Your insurance will be affected as follows: --------------------
If You do not resume Active Work in an eligible class at this time, Your employment will be considered to end and Your insurance will end in accordance with the DATE YOUR INSURANCE ENDS subsection of the section entitled ELIGIBILITY PROVISIONS: INSURANCE FOR YOU.

11.     On information and belief, despite the policy provision providing that the Policyholder would pay premiums for up to three months, Plaintiff alleges that TRINET and/or PCBB paid the premiums under the Plans from January 1 until March 31, 2011, but then terminated premium payments after that date, without providing any notice to Plaintiff or Decedent.

12.     The Policies also contained an option for the insured to convert the Policy to an individual policy of life insurance upon the end of the insured's employment, provided that METLIFE received a completed conversion application form within 31 days after the date the insured's employment ended.

///

-4-

13.     At all material times herein, Plaintiff and Decedent complied with all the material provisions pertaining to the Plan and Policy and/or compliance was waived by Defendants.  On or about January 1, 2011, Decedent developed complications due to terminal breast cancer, and was required to take a Leave of Absence from her employment at PCBB.

14.     From January 1, 2011 until Decedent's death on June 23, 2011, both Decedent and Plaintiff repeatedly inquired of TRINET and PCBB on steps needed to be taken to ensure Decedent's continued eligibility for benefits, including life insurance benefits under the Plans.  On February 22, 2011, Decedent contacted Nisha Berrios of TRINET, stating "I don't want any insurance to lapse so can you please let me know which ones are needed to continue to pay right after March on my own.  These might include any supplemental insurance.  Also, I would like some information on where to send these payments."  Despite the repeated inquiries of Decedent and Plaintiff, neither TRINET nor PCBB ever disclosed how or whether Decedent could maintain Decedent's continued eligibility under the Plans, nor did TRINET or PCBB make premiums payments under the Plan after March 31, 2011.  Instead, TRINET and/or PCBB represented that Decedent was actively employed by PCBB up until her death on June 23, 2011.   At no time were Decedent nor Plaintiff informed of a pending or actual cancellation of the Group Plans nor were they informed of steps necessary to avoid such a cancellation.

15.     On or around June 23, 2011, while the Group Policies were in full force and effect, Decedent died in the City of San Leandro, County of Alameda, State of California.

16.     Shortly after Decedent's death, Plaintiff filed with METLIFE a claim for payment of benefits under the terms of the Group Policies.

17.     On July 13, 2011, METLIFE informed Plaintiff that it would be denying his claim for life insurance benefits under the Group Policies and the Plans, asserting that the Group Policies were cancelled on April 4, 2011 as "the date premium payments for the employee stopped on March 31, 2011."  METLIFE asserted that Decedent's last day of work was on December 31, 2010 and that because Decedent "did not continue making the required premium payments there was no life insurance in effect at the time of her passing."

18.     After receiving the July 13, 2011 denial letter, Plaintiff contacted TRINET, and was told by a TRINET representative that Decedent was actively employed by PCBB until her death on June 23, 2011, contrary to the statements in the July 13, 2011 denial letter that Decedent's last day of work was December 31,

-5-

2010.  TRINET represented that METLIFE's decision appeared to be erroneous and assured Plaintiff that TRINET would assist Plaintiff in rectifying any error.

19.     Plaintiff appealed METLIFE's denial and on August 9, 2011 METLIFE denied Plaintiff's appeal, thus exhausting all pre-suit remedies available to Plaintiff.

20.     As a direct and proximate result of Defendants' actions, Plaintiff suffered damages as outlined below.

21.     As the result of the actions of Defendants, and each of them, Plaintiff has improperly been deprived of life insurance benefits to which he was and is entitled with interest thereon, and has suffered further and severe economic hardship and emotional distress.

22.     As a further result of the actions of Defendants, and each of them, Plaintiff has been forced to engage the services of legal counsel for the purpose of obtaining his insurance benefits.

## First Cause of Action

(Recovery of Employee Benefits)
(Against All Defendants (29 U.S.C. §1132(a)(1)(B))

23.     Plaintiff refers to Paragraphs 1 through 22, inclusive, of this Complaint, and by reference made, incorporates them as though fully set forth at this point.

24.     At all relevant times, Plaintiff was insured under the Plans and Defendants were responsible for the administration and handling of Plaintiff's claim for benefits under the Plans.

25.     At all material times herein, Plaintiff has complied with all the material provisions pertaining to the Plans, and/or compliance has been waived or Defendants are estopped from asserting non-compliance.

26.     While the Plans were in full force and effect, Decedent Carol Echague died and Plaintiff became entitled to receive life insurance benefits under the Plans.

27.     Plaintiff duly submitted a claim for benefits.

28.     METLIFE, however, refuses and continues to refuse to make payment to Plaintiff.  Plaintiff has appealed this denial and exhausted administrative remedies.

29.     Defendants' refusal to pay Plaintiff violates the terms of the Plans and applicable law.  At all material times herein, Defendants, and each of them, failed and refused to honor the Plans.  Defendants are liable for all benefits due under the Plans which have been improperly withheld from Plaintiff.

30.     As a proximate result of Defendants' actions, Plaintiff has been deprived of life insurance benefits to which he was and is entitled, and has suffered damage.

## Second Cause of Action

(Equitable Relief)
(Against All Defendants (29 U.S.C. §1132(a)(3))

31.     Plaintiff refers to Paragraphs 1 through 30, inclusive, above, and by reference made, incorporates them as though fully set forth at this point.

32.     At all material times herein, Defendants METLIFE, TRINET and PCBB were fiduciaries with respect to their exercise of authority over the management of the Plans, disposition of assets of the Plans, and administration of the Plans.

33.     Plaintiff asserts a breach of fiduciary duty against METLIFE, TRINET and PCBB as an individual participant of the Plans and on behalf of all other similarly situated participants and beneficiaries of the Plans.

34.     Plaintiff asserts that a claim for benefits due under the Plans does not provide him with an adequate remedy at law in light of METLIFE, TRINET and PCBB's continuing course of conduct in violating the terms of the Plans and applicable law as described below.

35.     METLIFE, TRINET and PCBB were obliged to discharge their duties solely in the interests of beneficiaries and participants for the exclusive purposes of providing beneficiaries and participants benefits, defraying reasonable expenses of the Plan, using all prudent skill and diligence in accordance with the documents and instruments governing the Plans.  Said duties include, but are not limited to, knowing the important terms of the applicable Group Policies and so informing the Decedent and similarly situated participants when appropriate, paying Decedent's and similarly situated participants' premiums to METLIFE to ensure continued coverage under the terms of the Plans, and promptly notifying the Decedent (or Plaintiff) and similarly situated participants or beneficiaries of any changes to or threatened cancellations of the Plans, any premium payment obligations, conversion rights and reasons for the exercise of conversion rights.

36.     Plaintiff's Decedent and similarly situated participants timely remitted the premiums and/or properly relied upon Defendants' payments of same for the Plans prior to Decedent's death and relied on the skill, knowledge, and expertise of Defendants, and each of them, and relied on their representations.  As a result

of TRINET and PCBB's role as co-plan administrators of the Plans, both Decedent and TRINET and PCBB knew and understood that Decedent and similarly situated participants would rely on and TRINET and PCBB would provide such services and expertise to Decedent and similarly situated participants. METLIFE was also aware that TRINET and PCBB were responsible for collecting and remitting premium payments for coverage under the various plans.

37.    At all material times, METLIFE, PCBB and TRINET violated these duties by, inter alia, the following:

A.    Consciously and unreasonably and without justification failing to provide accurate and complete disclosure of information to Decedent, Plaintiff and similarly situated participants, and/or failed to advise Decedent, Plaintiff and similarly situated participants of the important policy provisions and considerations which provided METLIFE a purported basis to deny Plaintiff's life insurance claim and the claims of similarly situated beneficiaries. Each Defendant failed to inform Plaintiff and Decedent that the policy would lapse or be cancelled, how to properly pay premiums, or how to convert the policy, despite Plaintiff and Decedent's multiple requests to TRINET and PCBB for that very information. Defendants knew or should have known that the above-mentioned representations and/or nondisclosures were false, and each of them, had no intention of providing life insurance benefits to Plaintiff's Decedent and similarly situated participants as a result of death;

B.    Consciously and unreasonably and without justification failing to provide full and complete documentation relevance to Plaintiff's claim. In particular, MetLife and TRINET each alleged that the other was responsible for compiling and providing the purported administrative record, and yet neither defendant provided a full and complete administrative record before, during or after Plaintiff's administrative appeal. Moreover, all defendants refused and failed to provide policies, procedures and guidelines, as well as internal contracts and agreements regarding the relationship among the Defendants.

C.      All Defendants failed to ensure actual delivery of all relevant plan documents to their employees/beneficiaries as required by ERISA.

D.      TRINET and MetLife failed to institute any procedures or mechanisms to inoculate themselves against their structural conflict of interest as, in the case of METLIFE, the payor benefits and the decision-maker, or in the case of TRINET the beneficiary of reduced benefit payments and the decision-maker.

E.      TRINET and PCBB misrepresented to Plaintiff and Decedent and similarly situated participants that Decedent and similarly situated participants were actively employed and therefore entitled to coverage under the Plans, while failing to disclose that Plaintiff and similarly situated participated were not actively employed and therefore disqualified for coverage;

F.      All DEFENDANTS Misrepresented and/or failed to disclose to Plaintiff and Decedent and similarly situated participants the appropriate steps necessary to maximize plan participants' benefits under the Plans, including the Basic Life Plan and the Supplemental Life Plan;

G.      TRINET and PCBB consciously, unreasonably and without justification failed to provide to METLIFE the premiums required to continue coverage under the Group Policies and the Plans, upon their knowledge that Plaintiff's Decedent and similarly situated participants were "Totally Disabled" under the terms of the Supplemental Life Plan;

H.      TRINET and PCBB, acted in a manner inconsistent with the terms of the Plans and Group Policies, by paying the premiums for Decedent from January 1, 2011 to March 31, 2011, followed by a termination of payment of premiums with no notice or explanation to Decedent or Plaintiff for TRINET and PCBB's termination of premium payments;

I.      METLIFE failed to make good faith attempts to evaluate a prompt, fair and equitable settlement of Plaintiff's claims and the claims of similarly situated beneficiaries;

///

-9-

J.     All Defendants failed to acknowledge and act reasonably upon communication with respects to the Plaintiff's claims and the claims of similarly situated beneficiaries arising under the Group Policies;

K.     METLIFE failed to pay benefits under said Group Policies to Plaintiff and similarly situated beneficiaries when the METLIFE knew Plaintiff was entitled to said payments under the terms of the contract of insurance;

L.     All Defendants failed to adhere to reasonable standards for the prompt investigation and processing of Plaintiff's claim and the claims of similarly situated beneficiaries arising under the Group Policies;

M.     METLIFE failed to affirm or deny coverage of Plaintiff's claims and the claims of similarly situated beneficiaries within a reasonable time after proof of loss requirements had been completed and submitted by Plaintiff;

N.     METLIFE delayed payments to Plaintiff and similarly situated beneficiaries knowing Plaintiff's claim and claims of similarly situated beneficiaries for benefits under said Group Policies to be valid;

O.     METLIFE withheld payments from Plaintiff knowing Plaintiff's claim and claims of similarly situated beneficiaries for benefits under said contract of insurance to be valid;

P.     All Defendants failed to reasonably and promptly investigate and process Plaintiff's claims and claims of similarly situated beneficiaries for benefits under said Group Policies;

Q.     METLIFE and TRINET failed to provide a reasonable explanation of the basis relied on in the Group Policies, in relation to the facts or applicable law for the denial of the claim; and

R.     METLIFE and TRINET failed to give the interests of Plaintiff and similarly situated beneficiaries, at least as much consideration as it gave its own interests.

38.     Plaintiff and Plaintiff's Decedent, and similarly situated participants and beneficiaries were justified in relying on the representations and actions of Defendants. Plaintiff's Decedent and similarly situated participants reposed trust and confidence in the knowledge, integrity and fidelity of Defendants, and each of

them, and Plaintiff's and Plaintiff's Decedent and similarly situated participants and beneficiaries relied on the good faith and integrity of Defendants, and each of them. As a result of the Plaintiff's and Plaintiff's Decedent's, and similarly situated participants and beneficiaries' confidence, trust and faith in the knowledge and integrity of the Defendants, Plaintiff's and Plaintiff's Decedent, and similarly situated participants and beneficiaries were justified in relying on the representations and actions of the Defendants, and thereby refrained from providing the premiums to ensure continued coverage, converting coverage to applicable individual policies and/or advising METLIFE that Decedent and similarly situated participants were "Totally Disabled" and thus entitled to have their premiums paid under the terms of the Group Supplemental Life Policy.

39.    Plaintiff further requests "appropriate equitable relief" as set forth in CIGNA v. Corp. v. Amara, 131 S.Ct. 1866 (2011), for Defendants' breaches of fiduciary duties, either through equitable surcharge (in an amount equal to Plaintiff's loss due to the DEFENDANTS's representations and/or nondisclosures regarding the conditions to ensure Decedent's continued coverage under the Plans), equitable reformation (by rewriting and/or modifying the Plan in order to permit Decedent's eligibility for life insurance benefits under the Plan at the time of her death) or equitable estoppel (by estopping METLIFE, TRINET and/or PCBB from relying on the failure to pay premiums after April 1, 2011 as a basis for denying life insurance benefits under the Plans).

40.    Plaintiff further requests judgment permanently enjoining METLIFE, TRINET or PCBB from ever again serving as a fiduciary with respect to the Plans, together with attorneys' fees and costs.

## Third Cause of Action

(Failure to Produce Documents)
(Against TRINET (29 U.S.C. §1132(c)(1)))

41.    Plaintiff realleges and incorporates by reference herein Paragraphs 1 through 40 of this Complaint as though fully set forth herein.

42.    Plaintiff made proper written requests for documents to which he was entitled under 29 U.S.C. § 1024(b)(4) and other relevant sections of ERISA. On August 13, 2011 Plaintiff made a request to for a copy of any and all documents relating to Decedent's life insurance policy to TRINET via e-mail. On April 16, 2013 Plaintiff made a formal written request to TRINET via personal messenger service for documents relating to Decedent's life insurance policy, his claim for benefits, and Defendants' policies, procedures, and

guidelines related to the handling of such policy and claim. The documents were not provided in response to these requests.

43.     Defendant's failure to provide said documents within thirty (30) days of Plaintiff's original request entitles Plaintiff to the civil penalties of $110 per day per document, as described in 29 U.S.C. 1132(c)(1) and as set forth in 29 C.F.R. 2575.502c-1. Said penalties begin on the thirty-first (31st) day following the date Defendants received Plaintiff's document requests.

44.     To date, TRINET continues to fail and refuse to provide the documents requested by Plaintiff, including the entire claims file. It has therefore been more than the 30 days permitted under the regulations.

45.     Defendant TRINET's failure to and refusal to provide all requested documents, including a full and complete copy of the claim file, and their policies, procedures and guidelines, is further evidence of METLIFE's conflict of interest and bad faith in adjudicating Plaintiff's claim for benefits.

46.     Moreover, Defendant TRINET's failure to and refusal to provide all requested documents, including a full and complete copy of the claim file, is further evidence of TRINET's breach of its fiduciary duties and obligations under ERISA.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.     For compensatory and consequential damages according to proof at trial;

2.     For general damages according to proof;

3.     For a judicial declaration that METLIFE and/or TRINET is obligated to pay the lump sum life insurance benefit of $444,000, together with interest at the legal rate from the date the claim was made and until paid, all in a sum according to proof at the time of trial;

4.     For equitable and injunctive relief as set forth above;

5.     For reasonable attorneys' fees incurred herein;

6.     For prejudgment interest;

7.     For costs of suit herein;

8.     For penalties of $110 per day, beginning on the thirty-first (31st) day following the date Defendants received Plaintiff's document requests; and

-12-

9.    For such other and further relief as the Court may deem just and proper.


Dated:  December 18, 2014                    THE GREY LAW FIRM, PC


                              By:    /s/ Rebecca Grey
                                     _____
                                     Rebecca Grey
                                     Attorneys for Plaintiff
                                     ERNIE ECHAGUE