United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ERNIE ECHAGUE,

              Plaintiff,

     v.

METROPOLITAN LIFE INSURANCE
COMPANY, et al.,

              Defendants.

Case No.  12-cv-00640-WHO

**ORDER GRANTING IN PART
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT; DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT; GRANTING
DEFENDANT'S MOTION FOR
JUDGMENT AS A MATTER OF LAW;
DENYING PLAINTIFF'S MOTION FOR
LEAVE TO AMEND**

Re: Dkt. Nos. 92, 103, 104, 107

     After being diagnosed with cancer and going on medical leave, Carol Echague sent

defendant TriNet Group, Inc. a specific inquiry about her insurance coverage, stating that she did

not want any of it to lapse.  TriNet responded by referring her to confusing form letters it had

already provided that did not specifically address the policies that were in danger of lapsing.  Ms.

Echague died four months later, and her husband, the plaintiff here, then learned that her insurance

policies had lapsed.  Among several issues, I have to determine whether TriNet breached its

fiduciary duty to the Echagues and whether it or any other defendant is liable as a result.   I find

that TriNet's insufficient response violated its fiduciary duties under ERISA and GRANT

plaintiff's motion on that ground.  In all other respects, I GRANT defendants' motions for

summary judgment and judgment on the pleadings.

## BACKGROUND

     Mr. Echague sues defendants Metropolitan Life Insurance Company (MetLife), TriNet

Group, Inc., (TriNet),[1] and Pacific Coast Bankers' Bank (PCBB)  for Recovery of Employee

---

[1] In additional to TriNet Group, Inc., the TriNet Group, Inc. Basic Life Insurance Plan (Basic

United States District Court
Northern District of California

1   Benefits under 29 U.S.C. §1132(a)(1)(B) and for equitable relief and breach of fiduciary duty

2   under 29 U.S.C. §1132(a)(3).  His wife, Carol Echague, was employed by PCBB.[2]  PCBB

3   outsourced its payroll and benefits administration to TriNet.  TriNet sponsored and made available

4   to PCBB employees two life insurance policies that are relevant to this case:  the TriNet Basic Life

5   Insurance Policy and the TriNet Supplemental Life Insurance Policy (Policies).  The premiums for

6   the Basic Policy were paid by PCBB.  Carol Echague paid the premiums for the Supplemental

7   Policy.  As of January 2011, Ms. Echague's coverage amount was $440,000.  Both policies were

8   issued by MetLife.

9       Carol Echague was diagnosed with breast cancer and went on a leave of absence as of

10  January 1, 2011.  Declaration of Sheryl Southwick, Exhibit G.  PCBB offered to pay Ms.

11  Echague's "portion of her benefits premiums until the point in time she would need to go onto

12  COBRA."  Declaration of Ernie Echague (Docket No. 109), Ex. 4 at E614.  PCBB paid for Ms.

13  Echague's portions of her health care and life insurance benefits payments through March 31,

14  2011.

15      On January 24, 2011, TriNet sent two letters to Ms. Echague.  The first letter "RE: Request

16  for Leave of Absence" identified Ms. Echague's leave as starting on January 1, 2011 and her

17  COBRA effective date as April 1, 2011.  Ex. G.[3]  The letter explained that it was important for

18  Ms. Echague to understand her rights and responsibilities and referred her to "the addendum to the

19  Employee Handbook" or the "TriNet Employee Handbook" for specific information on PCBB's

20  leave policies and benefits while on leave.  *Id.*  The letter noted that the "addendum" could be

21  viewed on TriNet's "HR passport" website under My Company-> Company Addendum.  *Id.*  The

22  letter did not address Ms. Echague's Basic or Supplemental Life Insurance Policies and did not

23  mention MetLife, but did address COBRA, disability and other topics.[4]  For more information Ms.

24

25  Policy) and the TriNet Group, Inc. Supplemental Life Insurance Plan (Supplemental Policy) are
    also sued as defendants.  The Court will refer to these entities collectively as TriNet.
26  [2]  Unless otherwise noted, all facts discussed in the Background section are undisputed.
    [3]  PCBB's HR Representative, Kerianne Hohener, informed plaintiff that Ms. Echague's leave
27  would start on January 16, 2011.  Echague Decl., Ex. B at E00619.
    [4]  The letter included a section regarding Group Variable Universal Life (GVUL) insurance, but it
28  is undisputed that Ms. Echague did not participate in that plan and that plan is separate from the
    Basic and Supplemental Plans under which she was covered.

1    Echague was referred to the "TriNet Employee Handbook" and the "TriNet Signature Benefits

2    Guidebook," which "could be" found on HR passport, and to the TriNet solutions center's 800

3    number.  *Id*.

4        The second letter was a "FMLA/CFRA Notice" informing Ms. Echague about her rights

5    under the federal Family and Medical Leave Act (FMLA) and the California Family Rights Act

6    (CFRA).  Southwick Decl., Ex. H.   The letter explained how the FMLA/CFRA leave would work

7    and discussed the payment of health benefits during the leave.  *Id*.   The letter also stated that if "a

8    portion of your paycheck normally goes to pay for certain voluntary expenses, such as additional

9    GVUL life or AFLAC, you will need to make payment directly to the providers of these benefits

10   during your leave.  If you need contact information, refer to www.hrpassport.com or call the

11   TriNet Solution Center at 1-800-638-0461."  *Id*.  The letter did not mention MetLife or the Basic

12   or Supplemental Insurance Policies.

13       On February 22, 2011, Ms. Echague sent an email to TriNet employee Nisha Berrios and

14   PCBB HR representative Kerianne Hohener.[5]  The email read, "I don't want any insurance to

15   lapse so can you please let me know which ones I need to continue to pay right after March on my

16   own.  These might include any supplemental insurance.  Also, I would like some information on

17   where to send these payments.  If you are not the right individual who can assist me, kindly direct

18   me to the right individual."  Echague Decl., Ex. 6 at E00624.  In response, Ms. Berrios, simply

19   resent Ms. Echague copies of the two January 24, 2011 letters.  *Id*. at E00623.  Ms. Berrios did not

20   provide Ms. Echague with any details regarding which benefit payments she would need to take

21   over as of March 31st, and did not provide any information on where to send those benefit

22   payments.

23       The only further communications between the Echagues and TriNet prior to Ms. Echague's

24   death, were April 1st and April 4th emails between plaintiff and Ms. Berrios from TriNet

25   regarding whether the Echague's could secure COBRA coverage for a week, while the Echagues'

26   health care coverage was transferred from PCBB/TriNet to plaintiff's employer's plan.  Echague

27   

28   [5]   Ms. Berrios was identified by PCBB's HR representative as the contact person at TriNet for
     questions about Ms. Echague's leave.  *See* Echague Decl., Ex. 2 at E00618.

1    Decl., Ex. 8 at E00715-716.

2         Ms. Echague's leave of absence from PCBB was extended through August 31, 2011.

3    Echague Decl., Ex 9 at E00613.  She died on June 23, 2011.

4         On June 27, 2011, TriNet notified Mr. Ehcague by letter that a group life insurance claim

5    had been submitted on his behalf.  It requested additional information from him.  It mentioned, for

6    the first time, that MetLife was the administrator of the life insurance Policies.  Echague Decl., Ex.

7    10 at E0061.  In July 2011, plaintiff was informed that the life insurance claim was denied by

8    MetLife for nonpayment of premiums.  Plaintiff forwarded the email regarding the denial to

9    TriNet and appealed the denial with MetLife.  Echague Decl., Exs. 11 & 12.  In his appeal,

10   plaintiff argued that neither he nor his wife had been informed that the policies were at risk of

11   terminating and that neither he nor his wife received notice from anyone that PCBB was no longer

12   making premium payments.  *Id*., Ex. 12 at E00604.

13        According to TriNet and PCBB, the ERISA Plan at issue is "The TriNet Employee Benefit

14   Insurance Plan Section, 125, Section 1209."  Southwick Decl. ¶ 4.  The Plan is a cafeteria-type

15   plan which provided employees of PCBB with a number of health and welfare benefits to choose

16   from.  The Basic and Supplemental Life Insurance Policies at issue were offered under the Plan.

17   *Id*. ¶ 5.  TriNet acts as the "Plan Administrator" for the Plan and the Policies, and MetLife is the

18   "Claims Administrator" under the Policies.  *Id*.

19        TriNet employee Sheryl Southwick testified that the ERISA-required Summary Plan

20   Description (SPD) for the Plan is the "TriNet *Signature* Benefits Guidebook & Summary Plan

21   Description" along with the applicable Certificates of Insurance for the Policies issued by MetLife.

22   *Id*. ¶ 7 (emphasis added).  Confusingly, and contrary to that statement, Ms. Southwick then states

23   that prior to October 2010, the Guidebook was titled the "TriNet *Signature* Benefits," but the SPD

24   for the 2010-2011 Plan Year is the called the "TriNet Benefit Guidebook & Summary Plan

25   Description."  Ms. Southwick attaches a copy of the TriNet Benefit Guidebook and SPD to her

26   declaration as Exhibit A.  Southwick Decl., Ex. A.

27        The TriNet Benefits Guidebook & Summary Plan Description explains that the Guidebook

28   plus the "separate Carrier Certificates" found on the HR Passport site make up the entire SPD.  Ex.

United States District Court
Northern District of California

4

A at DT000360.  The Guidebook briefly explains the types of life insurance available to employees (Basic, Supplemental, GVUL), conversion rights (to allow insurance to continue if "benefit coverage terminates"), and refers employees to the "carrier certificates" for more information about specific policies.

The Certificates of Insurance for the MetLife Basic and Supplemental Life Insurance Policies provide:

**CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT** . . .

**FOR FAMILY AND MEDICAL LEAVE**

Certain leaves of absence may qualify for continuation of insurance under the Family and Medical Leave Act of 1993 (FMLA), or other legally mandated leave of absence or similar laws.  Please contact the Policyholder for information regarding such legally mandated leave of absence laws.

**AT THE POLICYHOLDER'S OPTION**

The Policyholder has elected to continue insurance by paying premiums for employees who cease Active Work in an eligible class for any of the reasons specific below.

1. for the period You cease Active Work in an eligible class due to injury or sickness, up to 2 months;

\*\*\*

At the end of any of the continuation periods listed above, Your insurance will be affected as follows:

\*\*\*

- If You do not resume Active Work in an eligible class at this time, Your employment will be considered to end and Your insurance will end in accordance with the DATE YOUR INSURANCE ENDS subsection of the section entitled ELIGIBILITY PROVISIONS: INSURANCE FOR YOU.

\*\*\*

**DATE YOUR INSURANCE ENDS**

Your insurance will end on the earliest of:

United States District Court
Northern District of California

United States District Court
Northern District of California

**for all coverages**

1. the date the Group Policy ends; or

2. the date insurance ends for Your class; or

3. the end of the period for which the last premium has been paid for You; or

**for Basic Life Insurance**

4. the last day of the calendar month in which Your employment ends; Your employment will end if You cease to be Actively at Work in any eligible class, except as stated in the section entitled CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT; or

5. the last day of the calendar month in which You retire in accordance with the Policyholder's retirement plan; or

***

Please refer to the section entitled LIFE INSURANCE; CONVERSION OPTION FOR YOU for information concerning the option to convert to an individual policy of life insurance if Your Life Insurance ends.

In certain cases insurance may be continued as stated in the section entitled CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT.

***

**LIFE INSURANCE: CONVERSION OPTION FOR YOU**

If Your Life Insurance ends for any of the reasons stated below, You have the option to buy an individual policy of life insurance ("new policy") from Us during the Application Period in accordance with the conditions and requirements of this section.  This is referred to as the "option to convert." Evidence of Your insurability will not be required.

**When You Will Have the Option to Convert**

You will have the option to convert when:

- Your Life Insurance ends because:

  - You cease to be in an eligible class;

***

**If You Die Within 31 Days After Your Life Insurance Ends**

United States District Court
Northern District of California

> If you die within 31 days after your Life Insurance ends, Proof of Your death must be sent
> to us.  When We receive such Proof with the claim, We will review the claim and if We
> approve it will pay the Beneficiary the amount of Life Insurance You were entitled to
> convert.

Declaration of Isela Perez, Ex. E (Basic Life Insurance Certificate of Insurance), Admin. 30, 31, 36-37 (Basic); Admin 93, 98, 101, 102 (Supplemental).  "Actively at Work or Active Work" is defined as "performing all of the usual and customary duties of Your job in a Full-Time basis." *Id*., Admin 26.  Employees are deemed to be actively at work during weekends or during Policyholder approved vacations, holidays or business closures.  *Id*.

The Certificate of Insurance for the Supplemental Life Insurance Policy has similar language, but also has a provision allowing employees to continue the life insurance for up to six months by "continuing to pay any premiums you were required to pay for such insurance" if the employee is "Totally Disabled" and unable to perform the duties of her regular job.  Admin 101.

TriNet and PCBB move for summary judgment and MetLife moves for judgment as a matter of law.  Plaintiff opposes those motions and moves for summary judgment in her favor against TriNet, PCBB and MetLife.[6]  Plaintiff also seeks leave to file a Third Amended Complaint to allege a cause of action against TriNet (specifically against the Basic Plan and the Supplemental Plan) for failure to produce documents under 29 U.S.C. § 1132(c)(1).

## LEGAL STANDARD

The denial of benefits in this case is reviewed under the abuse of discretion standard.  *See* February 8, 2013 Order at 3.  Under the abuse of discretion standard, a decision is not "arbitrary and capricious," unless it is "'not grounded on any reasonable basis.'"  *Tapley v. Locals 302 & 612 of Int'l Union of Operating Engineers-Employers Const. Indus. Ret. Plan*, 728 F.3d 1134, 1139 (9th Cir. 2013) (quoting *Oster v. Barco of California Employees' Ret. Plan*, 869 F.2d 1215, 1218 (9th Cir. 1988)).

---

[6]  TriNet objects to specific paragraphs of plaintiff's declaration, submitted in support of his Motion for Summary Judgment.  TriNet Oppo. to MSJ at 12-13.  The objections to statement in ¶ 1 about his wife's illness are DENIED.  The objections to statements in ¶¶ 1, 3, 7 & 8 about the contents of Exhibits 1, 3, 7 & 8 are DENIED.

1    However, where the administrator of the benefits plan has a conflict of interest, the abuse

2    of discretion review is further modified and the Court must review the benefits decision

3    "skeptically."  A conflict of interest arises where:

> the same entity makes the coverage decisions and pays for the
> benefits. This dual role always creates a conflict of interest, [citing
> *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008)], but it is
> "more important . . . where circumstances suggest a higher
> likelihood that it affected the benefits decision." [*Glenn*, 554 U.S. at
> 117]. The conflict is less important when the administrator took
> "active steps to reduce potential bias and to promote accuracy," *id.*,
> such as employing a "neutral, independent review process," or
> segregating employees who make coverage decisions from those
> who deal with the company's finances. [*Abatie v. Alta Health & Life
> Ins. Co.*, 458 F.3d 955, 969 n.7 (9th Cir. 2006) (en banc).]  The
> conflict is given more weight if there is a "history of biased claims
> administration." *Glenn*, 554 U.S. at 117.  Our review of the
> administrator's decision is also tempered by skepticism if the
> administrator gave inconsistent reasons for a denial, failed to
> provide full review of a claim, or failed to follow proper procedures
> in denying the claim.  (citations omitted).

*Harlick v. Blue Shield of California*, 686 F.3d 699, 707 (9th Cir. 2012).

The "skeptical" abuse of discretion standard has been explained by the Ninth Circuit as

follows:

> [W]e consider whether application of a correct legal standard was
> "(1) illogical, (2) implausible, or (3) without support in inferences
> that may be drawn from the facts in the record." [quoting *United
> States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir.  2009)].  That
> standard makes sense in the ERISA context, so we apply it, with the
> qualification that a higher degree of skepticism is appropriate where
> the administrator has a conflict of interest.

*Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011).

## DISCUSSION

## I.   FIRST CAUSE OF ACTION FOR RECOVERY OF INSURANCE BENEFITS UNDER 29 U.S.C. §1132(A)(1)(B)

Plaintiff's first cause of action is for reinstatement of the life insurance benefits under 28

U.S.C. § 1132(a)(1)(B).[7]  He challenges both MetLife's denial of his claim as well as TriNet and

MetLife's interpretation of the Policies, and moves for summary judgment arguing that all of the

---

[7] 29 U.S.C. § 1132(a)(1)(B) provides for an action by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

United States District Court
Northern District of California

defendants are liable for the denial of the benefits.  TriNet and PCBB move for summary

judgment, arguing the benefits denial claim cannot be asserted against them because they did not

make the decision to deny plaintiff benefits under the Policies.  MetLife moves for judgment as a

matter of law, arguing its claim determination should be upheld under the applicable abuse of

discretion standard of review.

### A.   TriNet's Interpretation of the Plan Terms Was Reasonable

Plaintiff argues that the terms of the Policies are ambiguous and that TriNet unreasonably

interpreted and applied the terms of the Policies when it concluded that the benefit premiums for

Ms. Echague's plans should cease as of March 31, 2011.  Specifically, plaintiff argues that under

the terms of Policies, the FMLA extension of benefits (12 weeks/three months) and then the 2

month continuation period, meant that Ms. Echague should have had her benefits paid for five

months.[8]  Plaintiff's Opposition to Defendants' Motions ("Pl. Oppo. Br.) at 2, 5, 21.

There are two problems with plaintiff's argument.  First, plaintiff points to nothing in

FMLA (or in the Policies) to support the argument that while Ms. Echague was on FMLA leave,

TriNet was *required* to continue paying the Basic and Supplemental Life Insurance premiums for

her.[9]  Instead, the evidence is that PCBB agreed to pay those portions of her insurance premiums,

United States District Court
Northern District of California

---

[8]  If Ms. Echague's life insurance benefits, *e.g.,* payments of the premiums, were continued for
five months, the insurance coverage would have terminated May 31, 2011.  Then, the "If You Die
Within 31 Days After Your Life Insurance Ends" provision in the Policy would have applied and
plaintiff would have been paid "the amount of Life Insurance" Ms. Echague was entitled to
convert.  *See* Admin 37.  Under plaintiff's alternate theory – Ms. Echague was still actively at
work until January 24, 2011, because she was being paid by PCBB through that date – Echague's
benefits would have extended through June 24, 2011, the day after she died.
[9]  At oral argument, plaintiff asserted that FLMA "covers" life insurance benefits, and cited to 29
C.F.R. § 825.215 as support.  However, FMLA requires only that "health care" benefits are
"maintained" during the 12 week leave "as if the employee had continued to work instead of
taking the leave.  If an employee was paying all or part of the premium payments prior to leave,
the employee would continue to pay his or her share during the leave period."  29 C.F.R. §
825.100(b).  The regulation relied on by plaintiff provides that at the end of a FMLA leave, the
employer is required to "*resume*" benefits offered to the employee, including life insurance
benefits, at the same level as provided when the leave began.  29 C.F.R. § 825.215(d)(1)
(emphasis added).  If while on FLMA leave, an employee desires to "continue life insurance,
disability insurance, or other types of benefits for which he or she typically pays, the employer is
required to follow established policies or practices for continuing such benefits for other instances
of leave without pay."  *Id.* (d)(3).  Here, PCBB offered to pay all of Ms. Echague's benefits
premiums during her FMLA leave "until COBRA kicked in," but there is no evidence it was
required to do so with respect to the life insurance premiums.

as well as her health care premiums, during that time.

Second, while the Policy documents do not explain how the FMLA and 2 month continuation periods run, TriNet's representative testified that the 2 month continuation period runs concurrently with any FMLA leave, because the 2 month continuation period starts, by its terms, when an employee ceases to be "Actively at Work." Supplemental Declaration of Isela Perez [Docket No. 119], Ex. C (Southwick Deposition) at 103:4 – 104:12. The definition of Actively at Work excludes employees on FMLA leave. *Compare* Admin 26 *with* Admin 31.

Plaintiff argues that TriNet's interpretation and application of these Policy terms makes no sense because the FMLA provision should be read to apply and run first, and the two month continuation period second and consecutively. But TriNet's interpretation is consistent with the language in the Policies defining when employees are considered "Active" and the language in the two month extension provision itself. Moreover, the two month continuation period is broader than the requirements under FMLA, as it applies to employees who have been laid off or are on non-sickness related leaves, and it is not limited to payments to maintain health care coverage. There is ample support for TriNet's position that the FMLA and two month continuation periods run concurrently. [10]

## B. Claim Determination

### 1. Whether This Claim Can Be Asserted Against PCBB and TriNet

PCBB and TriNet also move for summary judgment on plaintiff's first claim for denial of benefits under Section 1132(a)(1)(B), arguing that because neither PCBB nor TriNet had authority to decide or pay claims, they cannot be liable. *See* TriNet & PCBB Motion for Summary Judgment (TriNet MSJ) at 11-12. Defendants point out that it has already determined that TriNet delegated the "decision-making" authority under the plan to MetLife and MetLife has the discretion to determine who is entitled to benefits under the Plan. Docket No. 62, February 8, 2013 Order at 2-3, 5; *see also* SPD, Ex. A to Southwick Decl. at 28 (DT00380) ("TriNet delegates claim administration to our insurance carriers . . . . TriNet does not have the ability to influence

---

[10] There is no evidence that MetLife played any role in determining when the payments of premiums for Ms. Echague ended. Therefore, this claim cannot be asserted against MetLife.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    fully insured benefit carriers claims decisions.").  As such, TriNet/PCBB argue that MetLife is the

2    appropriate defendant for this claim.

3          Defendants rely on the Ninth Circuit decision in *Cyr v. Reliance Standard Life Ins. Co*.,

4    642 F.3d 1202, 1207 (9th Cir. 2011), which held that an insurance carrier who determined benefits

5    claims under the plan at issue was "the logical" defendant under Section 1132(a)(1)(B), even

6    though the insurer was not named as a plan administrator.  *Id*. at 1207; *see also Anderson v. Sun

7    Life Assur. Co. of Canada*, CV-12-00145-TUC-CKJ, 2013 WL 6076547 (D. Ariz. Nov. 19, 2013)

8    ("The Court finds that in this case, since [the plan administrator] had no authority to resolve

9    benefit claims or any responsibility to pay them, it is not the proper defendant for an action to

10   recover benefits as authorized by § 1132(a)(1)(B)."); *Cox v. Allin Corp. Plan*, C 12-5880 SBA,

11   2013 WL 1832647 (N.D. Cal. May 1, 2013) (dismissing employer where Claims Administrator

12   was entity given authority to process claims and appeals); *Matthew v. RPH on the Go USA, Inc*.,

13   CV F 11-1999 LJO BAM, 2013 WL 504711 (E.D. Cal. Feb. 8, 2013) (dismissing employer from

14   ERISA benefits claim where there was no evidence that employer played any role in denying

15   plaintiff's claim for disability benefits); *see also Moore v. Lafayette Life Ins. Co.,* 458 F.3d 416,

16   438 (6th Cir. 2006) (dismissing plan administrator when insurer/claim administrator exercised full

17   authority in adjudicating plaintiff's claim for benefits).

18         Plaintiff argues that because TriNet maintained discretionary authority to apply and

19   interpret the Policies, and was instrumental in failing to appraise the Echagues of their rights to

20   continue coverage, it is an appropriate defendant on the Section 1132(a)(1)(B) claim.  He points

21   out that in *Cyr*, the Ninth Circuit did not determine that the Plan Administrator was not an

22   appropriate defendant, but simply that the insurer entity that made the claim determination was an

23   appropriate defendant.  He also argues that *Cyr* and *Cox v. Allin Corp*. are inapposite because the

24   plan administrators there did not retain authority to apply and interpret the terms of the plans.  *See

25   also Matthew v. RPH on the Go USA, Inc*., CV F 11-1999 LJO BAM, 2013 WL 504711 (E.D. Cal.

26   Feb. 8, 2013) (dismissing employer because there was no evidence that it "operated" the disability

27   plan).  He contends that because TriNet retained the authority to interpret and apply the Plan terms

28

11

in this case, it should remain liable for the denial of benefits claim.[11]

The determination from which plaintiff is seeking relief in her first cause of action is not primarily related to the "administration of the plan," but is instead related to the decision to deny the life insurance claim. At this stage of the proceedings (as opposed to on a motion to dismiss when evidence has not been adduced), TriNet is no longer a proper defendant for the denial of benefits claim because it is undisputed that MetLife was the sole entity responsible for denying plaintiff's claim. As the court in *Anderson v. Sun Life Assur. Co. of Canada*, 2013 WL 6076547, concluded, the proper defendant at summary judgment stage on a claim regarding denial of benefits is the entity who made the claim determination and not a plan administrator who played no role in the decision to deny benefits. As detailed in the SPD, and previously found by this Court, TriNet delegated the authority to grant or deny claims solely to MetLife. Plaintiff has produced no evidence that TriNet had any authority over or input into the decision to deny plaintiff's claim. In absence of any such evidence, TriNet cannot be held responsible under ERISA for the denial of benefits.

Plaintiff does not address whether PCBB is a proper defendant under this claim, arguing only that TriNet is properly named. Summary judgment is GRANTED to PCBB and TriNet on the first cause of action.

### 2. MetLife's Conflict

#### a. Conflict of Interest

MetLife argues that its determination to deny the claim should be upheld under the abuse of discretion standard because under the express terms of the Policies' Certificates of Insurance,

---

[11] Plaintiff relies on the "cafeteria plan" document, Docket No. 37, Ex. A at DT001150, providing that "The operation of the Plan shall be under the supervision of the Administrator. It shall be a principal duty of the Administrator to see that the Plan is carried out in accordance with its terms, and for the exclusive benefit of Employees entitled to participate in the Plan. The Administrator shall have full power to administer the Plan in all of its details, subject, however, to the pertinent provisions of the Code." However, as the Court previously noted, this wide discretion was subsequently narrowed by the SPD which provided that "benefits will only be paid in the event that the plan administrator (or the plan administrator's delegate) determines in its discretion that the claimant is entitled to them." Docket No. 62, February 8, 2013 Order at 2-3. As the Court recognized, MetLife is TriNet's "delegate" and given discretion to determine claim eligibility. *Id.* at 3.

United States District Court
Northern District of California

MetLife was entitled to deny the claim because no premiums were paid after March 31, 2013. Plaintiff asserts that the Court should not defer to MetLife's claim determination but should subject the decision to the higher skeptical level of review because MetLife's conflict of interest as the payor of benefits and decision-maker as to claim entitlement infected its claims process. Plaintiff argues the conflict manifested itself in three ways: (1) MetLife failed to conduct a "full and fair" review of the claim; (2) MetLife failed to conduct an adequate investigation on the claim; and (3) MetLife failed to compile and/or consider an adequate administrative record before deciding the claim.

### b.   Full and Fair Review

Under ERISA, a claims administrator must provide adequate notice of the grounds on which a claim is denied and a full and fair review of the denial of the claim.  *See* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1.  Plaintiff argues that as part of that full and fair review, a claims administrator must provide a claimant with access to all documents "relevant" to the claim.  29 C.F.R. § 2560.503-1(h)(2)(ii).[12] A claims process should also "contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants."  29 C.F.R. § 2560.503–1(b)(5).

Plaintiff contends that MetLife's review process failed these requirements because MetLife "willfully insulated itself" from documents regarding the Echagues' claim that were in TriNet's possession and, instead, directed TriNet to submit only an employer's statement, a claimant's

---

[12]  "A document, record, or other information shall be considered 'relevant' to a claimant's claim if such document, record, or other information
      (i) Was relied upon in making the benefit determination;
      (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
      (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or
29 C.F.R. § 2560.503–1(m)(8).

statement, a beneficiary designation and a death certificate with the claim.  Plaintiff's Motion for Summary Judgment at 19.  He asserts that MetLife should have, as part of its review process, communicated with TriNet regarding whether or not the Echagues received adequate notice regarding the termination of the premium payments and whether TriNet administered Ms. Echague's premiums according to the terms of the Plan.

There is no support for the proposition that MetLife needed to take those steps in order to conduct a full and fair review.  The issue before MetLife was relatively straightforward: determine whether premium payments had been made on behalf of Ms. Echague until the date of her death and determine whether she was "Actively at Work" at the time of her death.  The information MetLife had – secured from TriNet in the first instance on the claim form and confirmed by the information plaintiff submitted on appeal – provided all of the information MetLife needed to consider before making a determination.  Plaintiff fails to provide support – under ERISA, its regulations, or case law—for her argument that MetLife as the Claims Administrator needed to do something more.  Even if MetLife was required to conduct some additional investigation into TriNet's conduct, plaintiff fails to show how that investigation would have led to a different determination on the benefits claim under the terms of the Policies.

Plaintiff also argues that MetLife failed to explain to plaintiff with "specificity" what information MetLife needed plaintiff to provide in order "to perfect his claim for benefits."  Pl. MSJ at 19.  However, he does not cite to any deficiencies in the letters MetLife sent to plaintiff in connection with the denial of benefits.[13]  Plaintiff does not identify what documents MetLife needed from plaintiff that it did not ask for.  Similarly, he does not identify what information MetLife lacked that could have been relevant to its coverage determination that MetLife should have asked plaintiff to provide.  Instead, the record reflects that MetLife had the necessary information required for it to determine plaintiff's claim and there is no evidence that MetLife could have, or should have, reached a contrary determination if only additional information had

---

[13]  In the denial, MetLife informed plaintiff that the claim was denied because the Policies were cancelled by the Plan Administrator when premium payments stopped.  Docket No. 36 at Admin 167-69.

United States District Court
Northern District of California

1   been provided.

2          There is nothing in the record to support plaintiff's claim that MetLife did not perform a

3   full and fair review as required.

4          **c.      Adequacy of Investigation**

5          Similar to the prior argument, plaintiff contends that MetLife failed to meets its duties

6   under ERISA by failing to "investigate" plaintiff's claim.  As plaintiff notes, a court may weigh a

7   conflict of interest "more heavily" where the administrator "fails adequately to investigate a claim

8   or ask the plaintiff for necessary evidence."  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955,

9   968 (9th Cir. 2006).  Plaintiff argues that on his claim, MetLife simply rubber stamped an

10  "inadequate" claim file and intentionally restricted the information it needed to make a reasoned

11  decision.  Pl. MSJ at 20.

12         Again, plaintiff cites no support for the proposition that MetLife needed or was on notice it

13  needed to acquire any additional information in order to fairly adjudicate plaintiff's claim under

14  the express terms of the Policies.  His reliance on *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792

15  (10th Cir. 2004) is misplaced.  In *Gaither*, the Tenth Circuit asserted the "narrow principle that

16  fiduciaries cannot shut their eyes to readily available information when the evidence in the record

17  suggests that the information might confirm the beneficiary's theory of entitlement and when they

18  have little or no evidence in the record to refute that theory."  *Id.* at 807.  There, the defendant

19  denied a claim for disability insurance by ignoring the grounds on which the plaintiff claimed he

20  was disabled; grounds that the administrative record indicated existed and could have been

21  confirmed through a few reasonable steps by defendant.  The same is not true here.  There is no

22  evidence in the record that any information that could have been provided by TriNet could have or

23  should have altered MetLife's determination on plaintiff's claim.

24         Plaintiff fails to demonstrate that MetLife did not conduct an adequate investigation.

25         **d.      Adequacy of Administrative Record**

26         Finally, plaintiff complains that the Administrative Record complied by MetLife and/or

27  TriNet was deficient.  In particular, plaintiff argues that all of the documents regarding the

28  Echagues' communications with PCBB and TriNet regarding Ms. Echague's employee benefits –

as well as communications between TriNet and PCBB – should have been included in the administrative record because they were "relevant" under 29 C.F.R. § 2560.503-1.  However, as defined by the applicable regulations, relevant documents are those relied on in making a benefits determination or "submitted, considered, or generated in the course of making the benefit determination."  Plaintiff provides no evidence that documents relied on by MetLife in making its benefit determination or documents "submitted, considered, or generated" in the course of MetLife making its determination were *not* included in the "Administrative Record.  Other documents in TriNet's possession may be relevant to the breach of fiduciary claims discussed below.  However, plaintiff has provided no basis on which to conclude the complained-of documents should have been included in its Administrative Record, or that the failure to include those documents in the Administrative Record shows that MetLife's conflict infected its decision on plaintiff's claim.

### 3.    Claim Determination

The Court has concluded that there is no evidence of MetLife's conflict infecting its decision.[14]  Nonetheless, even looking at MetLife's determination skeptically, the Court finds that MetLife's decision was reasonable and not an abuse of discretion.  Under the plain terms of the Policies, Ms. Echague's coverage terminated when the premiums ceased to be paid or when she ceased to be Actively at Work.  It is undisputed that Ms. Echague ceased to be Actively at Work, as defined by the Policies, when she went on leave.  Plaintiff responds that Ms. Echague was still an employee of PCBB at the time of her death and was simply on leave.  However, under the terms of the Policies, that did not qualify as Actively at Work.  It is also undisputed that no premiums were paid for Ms. Echague's Policies after March 31, 2011.  As MetLife points out, as a Plan Fiduciary, MetLife is required to follow the terms of the Policies.  *See, e.g.*, *Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1286 (9th Cir. 1990) ("as an

---

[14]  In her declaration, Katherine Callaghan discusses generally the steps MetLife takes to insulate its claims determination process from the financial considerations of the company.  *See* Docket No. 111-2.  Plaintiff objects to and moves to strike the Callaghan Declaration because MetLife's initial disclosures (disclosing Callaghan and her topics) were not served on plaintiff.  *See* Plaintiff's Reply in Support of Motion for Summary Judgment [Docket No. 127] at 13; *see also* Docket Nos. 131, 132, 133.  As I find no evidence that a conflict infected the claim determination here, I need not rely on the Callaghan Declaration and the request to strike is DENIED as moot.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  ERISA fiduciary, Metropolitan was required to apply the terms of the Plan.").[15]

2         As to the appeal of the denial, MetLife allowed plaintiff to submit additional information

3  in support of his claim.  *See, e.g.*, AR 158-160.  The documents subsequently submitted by

4  plaintiff to MetLife *demonstrated* that Ms. Echague's coverage had lapsed, given her leave status

5  and the termination of premium payments.  Moreover, MetLife consistently explained the reasons

6  for the denial of the claim and there is no evidence that MetLife failed to provide a full review or

7  failed to follow proper procedures.

8         In conclusion, the Court concludes that MetLife's decision should be upheld and MetLife's

9  motion for summary judgment on the § 1132(A)(1)(B) claim be granted in its favor.

## II.  BREACH OF FIDUCIARY DUTY UNDER 29 U.S.C. §1132(A)(3)

11        Plaintiff moves for summary judgment on her allegations that MetLife and TriNet

12  breached their fiduciary duties by failing to explain and provide adequate notice to plaintiff and

13  Ms. Echague of what they needed to do to continue the life insurance Policies.[16]

### A.  Plaintiff's Section 1132(a)(1)(B) claim does not provide adequate relief, to preclude a claim under (a)(3)

15        Defendants argue that plaintiff's Section 1132(A)(3) claim fails because he has an

16  adequate legal remedy under the Section 1132(A)(1) claim as well as in his claim for injunctive

17  relief under Section 1132(A)(2).   As noted above, a claim for benefits under Section

---

[15]  As discussed in more detail below, plaintiff also argues that MetLife had a fiduciary duty to inform the Echague's of the pending termination of Ms. Echague's Policies.  However, plaintiff fails to cite any support for imposing that obligation on a claims administrator.  Moreover, it is undisputed that MetLife did not have sufficient information to notify Ms. Echague of the termination.  TriNet remitted premium payments to MetLife in aggregate without information as to the identifies of which employees were covered under the Plan and TriNet did not provide any information to MetLife about an employee's change of status.  *See* Supplemental Declaration of Rebecca A. Hull [Docket No. 103-1], Ex. B at 206-207.  The only information MetLife received as to an employee's change of status would come when TriNet forwarded a conversion request or submitted a claim.  *Id*. at 207.  Plaintiff criticizes MetLife for this "self-imposed" ignorance, but cites no authority showing that this structure violates any specific provision of ERISA or that MetLife's fiduciary role required it to obtain and maintain additional information on individual participants.

[16]  Plaintiff does not make it clear in her motion for summary judgment or in her opposition to defendants' motions whether her "failure to communicate" argument is made under (a)(1)(b) or (a)(3).  However, as plaintiff contends the failure to communicate was a breach of defendants' fiduciary duties separate from any argument about the terms of the Policies, the Court will analyze it as an (a)(3) claim.

1132(a)(1)(B) allows plaintiff to state a claim to "to recover benefits due to him under the terms of the plan, to enforce his rights as a beneficiary under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." The Supreme Court has noted that this section "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). Section (a)(3), is a "catchall" or "safety net" designed to "offer[ ] appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Id.* In his complaint, plaintiff seeks the following equitable relief under his (a)(3) claim: removal of MetLife and/or TriNet as fiduciaries under the Plan and Policies;[17] equitable surcharge (in an amount equal to plaintiff's loss); reformation of the Plan (to permit payment of the lost benefits to plaintiff); or equitable estoppel (preventing defendants from relying on plaintiff's failure to pay premiums as a ground for denying relief). SAC ¶ 39.

Whether and when a plaintiff may assert both an (a)(1)(B) claim and an (a)(3) claim are complex questions. Defendants argue that because plaintiff has a claim for benefits under (a)(1)(B), he has an adequate remedy. Defendants also argue that because plaintiff is merely seeking the same form of relief under both his (a)(1)(B) and (a)(3) claims – the payment of the life insurance benefits – he cannot be considered to be seeking "appropriate" equitable relief that is available only under (a)(3). Courts within the Ninth Circuit, applying *Variety*, have dismissed (a)(3) claims which are merely duplicative of the (a)(1)(B) claims. *See, e.g., Ford v. MCI Communs. Corp. Health & Welfare Plan*, 399 F.3d 1076, 1083 (9th Cir. 2005), *overruled on other grounds by Cyr v. Reliance Std. Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. Cal. 2011) ("Because Ford asserted specific claims under 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(2), she cannot obtain relief under 29 U.S.C. § 1132(a)(3), ERISA's 'catchall' provision."); *Cline v. Industrial Maintenance Eng'g & Contr. Co.*, 200 F.3d 1223, 1229 (9th Cir. Cal. 2000) (dismissing (a)(3)

---

[17] At this juncture, plaintiff cannot rest her equitable relief claim on her request for removal of MetLife and/or TriNet as fiduciaries because plaintiff has wholly failed to submit evidence to substantiate her claim that defendants' pattern and practice of breaches of fiduciary duties justify this extraordinary relief. *See* Plaintiff's Oppo. [Docket No. 122] at 22-24 (citing allegations but no *evidence* of defendants' alleged pattern and practice of fiduciary duty breaches).

United States District Court
Northern District of California

claim where breach of contract claim under (a)(1)(b) provided appropriate relief and because plan, not individual plaintiffs, were proper party to seek relief); *see also Moyle v. Liberty Mut. Ret. Benefit Plan*, 2013 U.S. Dist. LEXIS 92324, * 48-49 (dismissing (a)(3) claims which although couched in terms of equitable relief, sought monetary relief more appropriately sought under (a)(1)(B)).

According to defendants, the question is not whether a plaintiff will be successful on, and can actually recover under, section (a)(1)(B), but whether plaintiff can state a claim under section (a)(1)(B). If so, defendants argue, the (a)(3) claim should be dismissed. *See, e.g., Tolson v. Avondale Indus.*, 141 F.3d 604, 610 (5th Cir. 1998) (that plaintiff "did not prevail on his claim under section 1132(a)(1) does not make his alternative claim under section 1132(a)(3) viable.").

The mere fact that the amount that plaintiff seeks under her (a)(3) claim is similar to the amount plaintiff seeks under her (a)(1)(B) claim does automatically preclude her (a)(3) claim. In *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011), a group of plan beneficiaries argued that the plan administrator improperly altered the terms of a plan, resulting in reduced benefits. The Court concluded that the plaintiffs could not recover for the lost benefits under (a)(1)(B) because the terms of the plan could not be rewritten under (a)(1)(B). However, the beneficiaries could still seek the amount of the reduction in benefits under (a)(3) based on "equitable surcharge" or equitable plan "reformation." *Id*. at 1878, 1880. Similarly, here plaintiff seeks equitable surcharge and reformation as remedies under (a)(3).

In this district, under the right circumstances, courts have allowed (a)(3) claims to survive at the summary judgment stage, despite that plaintiff asserted an (a)(1)(B) claim. For example, in *Sconiers v. First Unum Life Ins. Co*., 830 F. Supp. 2d 772, 777 (N.D. Cal. 2011) (WHA), the court allowed plaintiff to pursue both a Section 1132(a)(1)(B) claim for benefits and a 1132(a)(3) claim for reformation of the plan where, as here, the Section 1132(a)(3) claim was based on allegations that the plan administrator had misled plaintiff and made inconsistent representations as to the terms of the plan. The court concluded that both claims could proceed because "plaintiff seeks equitable relief under Section 1132(a)(3) based on a different theory than her claim under Section 1132(a)(1)(B) – namely, that defendants affirmatively misled her as to which policy governed her

disability claim. This theory is not foreclosed by plaintiff's pursuit of other theories under other statutory provisions." *Id*. at 778.  Defendants attempt to distinguish *Sconiers*,  arguing that the court declined to issue summary judgment on that claim because additional discovery was necessary to support the (a)(3) claim, is unavailing.  The court simply noted that more discovery was needed as to the communications between the parties in order to rule on the separate and distinct (a)(3) claim.  *Id*; *but see King v. Cigna Corp.*, C 06-7025 CW, 2007 WL 2288117, *12 (N.D. Cal. Aug. 7, 2007) (recognizing that an (a)(3) claim for equitable relief could survive despite a claim for benefits under (a)(1)(B), but dismissing plaintiff's (a)(3) claim because it was simply one for benefits based solely on claims that fiduciary failed to interpret plan properly, failed to adequately investigate the claim, failed to properly administer the claim, and failed to administer the Plan for the benefit of the beneficiaries).

Here, given the structure of plaintiff's claims as I have interpreted them, the (a)(3) claim is not foreclosed by the (a)(1)(B) claim.  Plaintiff's (a)(1)(B) claim for denial of benefits is primarily directed at MetLife, for its role as Claims Administrator and its failure to pay benefits.  The (a)(3) claim is primarily directed at TriNet for its role as Plan Administrator and its alleged failure to provide adequate notice and act in a fiduciary manner towards the Echagues.  While defendants focus on the fact that plaintiff seeks under his (a)(3) claim the same – or very similar – relief to the relief he seeks under her (a)(1)(B) claim, I find that plaintiff's (a)(3) claim is not foreclosed.  The more important factor is that adequate relief for the alleged fiduciary breaches by TriNet is only available under (a)(3) because of the way MetLife and TriNet divided their responsibilities for administering the Policies at issue.

Therefore, I will consider plaintiff's (a)(3) claim.

### B.  PCBB Cannot be Held Liable as a Plan Fiduciary

PCBB asserts it cannot be considered a plan fiduciary under ERISA and, therefore, it cannot be liable for any breach of fiduciary duty claim.  In opposition, plaintiff does not address PCBB's separate role or submit any evidence demonstrating that PCBB did play any role in administering the Policies or is otherwise liable under ERISA.   PCBB's motion for summary judgment is GRANTED.

United States District Court
Northern District of California

### C.  TriNet Can Be Held Liable as a Plan Fiduciary

TriNet argues that because it has already been determined that TriNet delegated its claims determination discretion to MetLife, TriNet cannot be held liable for a breach of fiduciary duties under ERISA.  However, while there was delegation for *claims* determination to MetLife, undisputed evidence shows that TriNet retained the responsibility for interpreting the Plan, applying the Plan terms, and administering the Plan.  For example, TriNet was the entity who sent Carol Echague the form notices about her benefits under COBRA and the FMLA.  It was also, TriNet who sent the monthly premium payments to MetLife, along with aggregate data about participants, and TriNet who retained the records of the individuals who were actually in the plans it administered for PCBB.  *See* Supp. Hull Decl, [Docket No. 103-1], Ex. B at 206-207.

Therefore, despite the delegation of claims determinations to MetLife, TriNet remained the Plan Administrator and remains liable for any breach of its fiduciary duties that might occur.

### D.  TriNet's Fiduciary Duties

Plaintiff's main theory on how TriNet breached its fiduciary duty is that TriNet failed to provide adequate notice to Ms. Echague of the impending termination of her life insurance Policies and how to continue or convert coverage for those Policies.  That argument is raised in a number of different ways and the Court will address each in turn.

#### 1.  Fiduciary Duty Standard

"The ERISA fiduciary duty includes the common law duty of loyalty, which requires fiduciaries to deal fairly and honestly with beneficiaries."  *Farr v. U.S. West Communs., Inc*., 151 F.3d 908, 915 (9th Cir. 1998).  In the Ninth Circuit, a fiduciary has an obligation to convey complete, thorough, and accurate information that is material to a beneficiary's circumstance.  *Id*. at 914, 915.  The Ninth Circuit has also held that "an ERISA fiduciary has an affirmative duty to inform beneficiaries of circumstances that threaten the funding of benefits" and "to provide an individual faced with termination of plan coverage, upon request, 'complete and correct material information on [his] status and options.'"  *Acosta v. Pacific Enterprises*, 950 F.2d 611, 619 (9th Cir. 1991), as amended by 1992 U.S. App. LEXIS 639 (9th Cir. 1992), (quoting *Eddy v. Colonial Life Ins. Co. of America*, 919 F.2d 747, 751 (D.C. Cir. 1990)).

### 2.  Provision of SPD by Electronic Means

The parties dispute whether TriNet's distribution of the SPD for the Policies through its HR Passport site provided adequate notice to Ms. Echague of the Policy documents.  Plaintiff argues that there is no evidence that any defendant actually provided a hard copy of any Plan documents to Ms. Echague or that she accessed the Plan documents electronically.  Plaintiff's MSJ at 11.  Plaintiff notes that there are strict regulations governing the provision of plan documents by electronic means.  *Id.* at 11-12 (citing 29 C.F.R. § 2520.104b-1 (affirmative consent required for electronic distribution)).  Plaintiff also relies on cases holding that employers must take steps that are "reasonably calculated" to reach participants to notify them of the availability of plan documents and plan changes, and cases holding that where electronic distribution of plan documents is used, employers must not only notify participants of changes to plan document but must also explain the significance of the changes.  *Id.*

TriNet responds by pointing to evidence that Ms. Echague consented to electronic notification and receipt of Plan documents.  Southwick Decl. [Docket No. 94] ¶ 8, Exs. B & C.  And there is evidence that during the time Ms. Echague was on leave, someone used her login and password to access HR Passport, where all of the relevant Plan documents were available.  *Id.* ¶ 10, Ex.  D.  Plaintiff initially objected to this evidence, arguing that it was not produced in discovery, but withdrew that objection upon proof that it had been disclosed.  Plaintiff's Reply to MSJ [Docket No. 127] at n.1.  He still argues that there is no evidence as to what documents Ms. Echague accessed when she (or someone else using her log in) went onto HR Passport during her leave.  However, as to the ERISA claims plaintiff arguably asserts, the Court finds that undisputed evidence shows that Ms. Echague consented to receipt of her ERISA Plan documents electronically and that she had access to the HR Passport system during the time in question.

### 3.  Governing Documents

Plaintiff also argues that TriNet breached its fiduciary duty because it is unclear which documents govern the Policies at issue, and whether those documents were provided to Ms. Echague.  He alleges that in one of the leave documents sent by TriNet on January 24, Ms. Echague was referred to "the addendum to the Employee Handbook" for more information, but

1    that document does not exist or has not been produced by defendants.  Plaintiff's MSJ at 12-13.[18]

2    He asserts that in this litigation TriNet identified the governing Plan document as the overarching

3    cafeteria plan (which plaintiff argues does not discuss how to maintain life insurance), and then

4    the SPD (which does not provide specific information on options to continue or convert  life

5    insurance).  MetLife, on the other hand, identified the Certificates of Insurance (CoI) for the Basic

6    and Supplemental Life Insurance policies as the Plan documents.  *Id.* at 13-14.[19]

7         Plaintiff is correct that the specific information regarding termination, maintenance, and

8    conversion for the Policies is found only in the Certificates of Insurance.  Plaintiff contends,

9    without citation to any provision or regulation under ERISA or case law, that it would be unfair to

10    require the Echagues to search for the needle in the haystack – the terms in the CoIs regarding how

11    to continue or convert her life insurance policies – when MetLife and TriNet themselves did not

12    agree which documents were governing.  But he ignores that TriNet did rely on the CoIs in its

13    motion regarding the standard of review.  *See* Southwick Decl. [Docket No. 37-2] ¶¶ 4-5 and Exs.

14    C & D.  Despite plaintiff's attempt to manufacture confusion on this point,[20] there does not appear

15    to be any disagreement between MetLife and TriNet as to which documents governed Ms.

16    Echague's life insurance benefits: the cafeteria plan that described the types of benefits to be

17    offered; the SPD that provided more detailed information about benefits and incorporated the

18    separate Certificates of Insurance for each type of benefit offered under the cafeteria plan; and

19    then the Certificates of Insurance themselves for the Basic and Supplemental life insurance

20    Policies at issue.  While this argument is not meritorious, I will address whether TriNet's

---

[18]   As noted above, one January 24th letter refers Ms. Echague to the "addendum to the Employee Handbook" and then the "TriNet Employee Handbook" available on HR Passport. Southwick Decl., Ex. G.  Plaintiff argues no such handbook was produced in discovery.  In opposition, TriNet refers to a handbook available on HR Passport by yet another name: the "PCBB Employee Handbook." TriNet Motion for MSJ at 4.

[19]   Plaintiff also argues that MetLife did not produce the SPD as part of the Administrative Record it created for this case.

[20]   Plaintiff attempts to argue that defendants themselves did not know which plans governed or how those plans operated by citing to deposition testimony of MetLife's Rule 30(b)(6) witness.  Plaintiff's MSJ at 14.  However, as discussed above, MetLife played no role in the administration of claims – i.e., figuring out who was covered and when coverage ended – but simply determined whether to pay claims – i.e., determining whether a claimant had died and whether the policy was in effect because premium had been forwarded for the deceased by TriNet.

communications in response to the Echagues' inquiries were sufficient or misleading under ERISA separately.

### 4. Notice of Termination

Plaintiff argues that it was a breach of fiduciary duty for TriNet not to have sent Ms. Echague a notice that her Policies were terminating. TriNet responds that making the SPD (and the incorporated CoIs) available to Ms. Echague was all that was required, and that ERISA fiduciaries are not required to notify participants when their benefits are to be terminated. Plaintiff relies on a series of cases that have held that when an employer terminates a Plan, prompt notice to the beneficiaries is required. For example, in *Peralta v. Hispanic Bus., Inc*., 419 F.3d 1064 (9th Cir. 2005), Ninth Circuit held the "purpose and structure of ERISA" required that a plan administrative provide "timely notice" when it terminated a plan. *Id*. at 1067; *see also Willett v. Blue Cross & Blue Shield*, 953 F.2d 1335, 1341 (11th Cir. 1992) (participants were entitled to notice of suspension of plan)*; Rucker v. Pacific FM, Inc*., 806 F. Supp. 1453, 1459 (N.D. Cal. 1992) (because "a termination of benefits affects a beneficiary's rights to a much greater degree than compared to a mere modification," prompt notice is required when a plan is terminated).

Plaintiff's cases, however, address the termination of plans, such as when an employer terminates a long term disability plan. They do not address what ERISA requires with respect to notice when an individual employee's benefits are terminated. In absence of citation to statutory or case law that requires fiduciaries to provide individualized notice to employees about the termination of their benefits due to their individual circumstances, the Court cannot find that TriNet breached its fiduciary duty by failing to do so here. *But see Maxa v. John Alden Life Ins. Co.*, 972 F.2d 980, 986 (8th Cir. 1992) ("this Court does not construe ERISA or the regulations under it to require that the appellee had a duty individually to warn, upon their sixty-fifth birthdays, each and all of the members of the plans which it insured that their benefits would be reduced according to the plan's coordination of benefits provision unless they enrolled in Medicare.").

### 5. TriNet's Response to Echague's Inquiries

As noted above, on February 14, 2011, plaintiff emailed TriNet asking for information

24

about his wife's supplemental disability, and whether she was qualified or had a plan.  Echague

Decl., Ex. 5.  In response, on the same date, TriNet representative Nisha Berrios responded that

she had sent out the information, and that she could "request another letter if needed."  *Id.*

Plaintiff responded on the same date and asked Berrios to resend the letter or information again,

and inquired whether the information was just a letter telling them what to do or a form.  *Id.*, Ex.

6.  There is no evidence that Berrios responded to the follow up email.

On February 22, 2011, Ms. Echague sent Berrios an email which stated in full:

> Hi!  I don't want any insurance to lapse so can you please let me
> know which ones I need to continue to pay right after March on my
> own.  These might include any supplemental insurance.  Also, I
> would want some information on where to send these payments.  If
> you are not the right individual who can assist me, kindly direct me
> to the right individual."

*Id.*  Berrios responded the same day, indicating she "just resent the information to you from the

leaves team."  *Id.*  There is no dispute that the only thing Berrios sent were the two form letters

dated January 24, 2011.  Those letters, as noted above, did not discuss either of the Policies at

issue.  The letters referred plaintiff to an "employee handbook," which has not been shown to

exist, as well as the "TriNet Signature Benefits Guidebook," which according to TriNet's Rule

30(b)(6) witness is actually called "TriNet Benefit Guidebook & Summary Plan Description."

Southwick Decl. [Docket No. 94], ¶ 7.  Finally, the letters referred Ms. Echague to HR Passport

for more information and provided an 800-number for TriNet.

I find that TriNet's response breached its fiduciary duties because the response failed to

provide complete and accurate information to Ms. Echague.  As the Ninth Circuit explained in

*Farr v. U.S. West Communs., Inc.*, 151 F.3d 908 (9th Cir. 1998), "ERISA requires a 'fiduciary' to

'discharge his duties with respect to a plan solely in the interest of the participants and

beneficiaries.' ERISA § 404(a), 29 U.S.C. § 1104."  *Id.* at 914.  The *Farr* Court noted that

"[a]lthough the Supreme Court [] declined to reach the question of whether ERISA imposes a duty

on fiduciaries to disclose truthful information on their own initiative, or in response to employee

inquiries" the Ninth Circuit has "previously held that a 'fiduciary has an obligation to convey

complete and accurate information material to the beneficiary's circumstance, even when a

beneficiary has not specifically asked for the information.'" *Id.* (quoting *Barker v. American Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995) (citation omitted)); *see also Barker,* 64 F.3d at 1403 (defendant fiduciary who had suspicions about investments, failed "to convey complete and accurate information concerning his suspicions with the Plan's maintenance, but he in fact misled the participants by reassuring them in writing that their funds were earning a 'prime interest rate plus two percent,' and that the funds would be available upon the participants' retirement.")

Other cases have explained what "complete and accurate" means under ERISA with respect to responses to individual inquiries by beneficiaries.  In *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747 (D.C. Cir. 1990), the plaintiff's employer was being sold and the group health care coverage cancelled.  The plaintiff called his insurance provider to inquire about continued or converted coverage, and the provider responded that continued coverage was not available, even though conversion was.  The court concluded that "a fiduciary in [defendant's] position has a duty upon inquiry to convey to a lay beneficiary like Eddy correct and complete material information about his status and options when a group policy is cancelled."  *Id.* at 750.  Defendant disputed whether the plaintiff asked about continued coverage (which was not available) or converted coverage (which was available), but that distinction didn't matter.  The court held that, as a fiduciary, the defendant was under a duty to communication all material facts and plaintiff "should not be penalized because he failed to comprehend the technical difference between 'conversion' and 'continuation.' The same ignorance that precipitates the need for answers often limits the ability to ask precisely the right questions."  *Id.* at 751.  Finally, the court rejected the argument that plaintiff should have continued to follow up to confirm his rights, because "Eddy did not have a duty to try and try again until he received correct and complete information. Once Eddy had made clear his situation, Colonial Life had a duty to provide the material information."  *Id.* at 752.[21]

---

[21] TriNet attempts to distinguish *Eddy* by arguing that, there, the insurer gave misleading information; that there was no conversion right.  TriNet Oppo. to MSJ at 22.  It misreads the D.C. Circuit's decision.  Without respect to the parties' dispute over whether Eddy asked specifically about continuation or conversion rights and the alleged misrepresentation, the Court held more broadly that "[o]nce Eddy presented his predicament, Colonial Life was required to do more than simply not misinform, Colonial Life also had an affirmative obligation to inform - to provide

United States District Court
Northern District of California

In *Krohn v. Huron Mem. Hosp.*, 173 F.3d 542 (6th Cir. 1999), the court found that defendant breached its fiduciary duty when, following plaintiff's accident and inquiry as to benefits by her husband, defendant failed to disclose to plaintiff that she was entitled to apply for long term disability (LTD) benefits.  The court rejected defendant's arguments that it was not required to tell plaintiff about the LTD because plaintiff never asked about LTD, defendant expected plaintiff to return to work before needing LTD benefits, and the LTD benefits were adequately described in the SPD provided to plaintiff four years earlier.  The court held that the defendant failed to provide all material information it had, despite plaintiff's failure to ask about LTD benefits specifically and despite the fact that the LTD benefits were described in the SPD. *Id*. at 549-50; *see also Gregg v. Transp. Workers of Am. Int'l*, 343 F.3d 833, 845-846 (6th Cir. 2003) (recognizing that when a beneficiary requests information from an ERISA fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even if that requires conveying information about which the beneficiary did not specifically inquire).[22]

Finally, in *Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3rd Cir. 1993), the widow of a plan participant asked her husband's employer, while COBRA election was still possible, whether she was entitled to a death benefit. The employer, which had previously sent letters informing the husband and wife of their COBRA option, answered that there was no death benefit and did not mention the COBRA benefits that would cover the substantial medical bills incurred by her husband. The court ruled that if the employer was acting in its fiduciary capacity, its "failure to advise her of the available benefits might be

---

complete and correct material information on Eddy's status and options."  *Eddy*, 919 F.2d at 751.
[22] TriNet attempts to distinguish *Krohn*, arguing that the Court there found that the defendant could have complied with its fiduciary duty by referring plaintiff to the SPD.  TriNet Oppo. to MSJ at 20; TriNet Reply in Support of MSJ at 13.  However, the Sixth Circuit recognized that referral to an SPD is not necessarily sufficient, but in that case might have been preferable to the incomplete information provided because the SPD there disclosed the availability of, and timeframe required to apply for, LTD benefits.  Here, however, TriNet did not refer Ms. Echague to the accurately named SPD or provide any specific answer to her inquiry.  Instead, it resent form letters which did not address the Policies, referred to non-existent or misnamed documents, and omitted any reference to the key documents at issue, the CoIs for the Policies and the conversion forms.

found to be a breach of fiduciary duty despite the fact that her inquiry was limited to the availability of a death benefit," and sent the case back to determine if a fiduciary duty had been breached by the failure to discuss COBRA benefits. *See also Estate of Becker v. Eastman Kodak Co.*, 120 F.3d 5, 10 (2d Cir. 1997) (in response to individual inquiry, and where the SPD was not clear on point in question, defendant breached its fiduciary duty by failing to provide plaintiff with complete and accurate information about her retirement options); *Switzer v. Wal-Mart Stores*, 52 F.3d 1294, 1299 (5th Cir. 1995) ("It is only after the plan administrator does receive an inquiry that it has a fiduciary obligation to respond promptly and adequately in a way that is not misleading."); *cf. Bins v. Exxon Co. U.S.A.*, 220 F.3d 1042, 1045 (9th Cir. 2000) ("We hold that when a plan participant inquires about potential plan changes, an employer-fiduciary has a duty to provide complete and truthful information about any such changes then under serious consideration."); *Gaines v. Sargent Fletcher, Inc.*, 329 F. Supp. 2d 1198, 1221 (C.D. Cal. 2004) (where employee applied for health coverage for his wife, paid premiums which insurer accepted, and where employer never notified the employee that he failed to qualify for coverage because he failed to fill out a specific form insurer required, employer breached its fiduciary duties).

I have no difficulty finding that TriNet's response to Ms. Echague's specific February 22, 2011 inquiry did not meet the "complete and accurate" standard recognized in these cases. First, the response – resending form letters – did not *answer* Ms. Echague's question about what benefits she might need to pay and where to send those payments. TriNet knew, but did not disclose to Ms. Echague, what benefits she would be responsible for paying for as of April 1, 2011. Moreover, TriNet knew exactly where the information Ms. Echague was seeking was located on HR Passport – *e.g.*, the CoIs (which are the only documents that describe how Echague could have continued or converted her coverage) and conversion forms – but it did not direct her to that information. In response to Ms. Echague's inquiry, TriNet had the duty to respond with the material information it *knew*; that premiums for her Policies were to end as of March 31, 2011, and that she would need to take specific steps to continue her coverage. It failed to do so.

Second, as noted above, the form letters referred to all sorts of benefits which Echague *might* have had (including ones she did not, such as gross variable universal life insurance), but

did not mention the benefits she did have (MetLife Policies).  Those letters also referred to an apparently non-existent or misnamed "Employee Handbook" (which TriNet now refers to as the "PCBB Employee Handbook"), referred to the SPD by the wrong name, and did not mention the CoIs – which are the only documents where plaintiff could have found information on termination, maintenance and conversion of the Policies.[23]  The generic, duplicative and confusing response provided by TriNet simply did not meet its fiduciary duties ERISA, which have been recognized as the "highest known to the law."  *See, e.g., Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996).

In its briefing and at oral argument, TriNet contended that the *only* response a fiduciary is required to provide in response to any individualized inquiry about benefits is reference to a clear SPD.  TriNet cites no cases in support of its limited conception of a fiduciary's duties under ERISA that are on point.  Instead, it relies on inapposite cases recognizing that in order to fulfill the duty to inform plan participants *as a whole* of their benefits, plan administrators are only required to issue an SPD that is clear.  Those cases stand for the well-established proposition that fiduciaries are not required in the SPD or in other required notices to foresee and address every possible situation a beneficiary may face.  For example, in *Day v. AT&T Disability Income Plan*, 698 F.3d 1091 (9th Cir. 2012), the employee claimed that defendant violated its fiduciary duties when it failed to inform or remind him at his retirement that a rollover of a lump sum retirement payment in an IRA would result in a decrease in his LTD benefits.  The Court rejected that argument and found that provision of the SPD, which disclosed the relevant information, was sufficient.  There was no legal requirement under ERISA requiring fiduciaries to "include warnings of all potential consequences" on retirement forms, when plan documents already contain that information.  *Id.* at 1099; *see also Stahl v. Tony's Bldg. Materials, Inc.*, 875 F.2d 1404, 1409 (9th Cir. 1989) (no duty to provide any individualized notice when SPD adequately explained the rule that applied to plaintiff).  Those cases, however, do not apply here where a

---

[23]  The defendants repeatedly state that that CoIs were "included" in the SPD.  *See, e.g.,* MetLife Oppo. at 7.  However, the actual CoIs were only referred to in the SPD.  Southwick Decl. [Docket No. 94], ¶ 7, Ex. A at DT000403.  They were not attached to the SPD or otherwise "included" in it.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   specific beneficiary asked TriNet a specific question and sought specific answers.[24]  *But see*

2   *Electro-Mechanical Corp. v. Ogan*, 9 F.3d 445, 451-452 (6th Cir. 1993) ("ERISA imposes a duty

3   upon fiduciaries to respond promptly and adequately to employee-initiated inquiries regarding the

4   plan or any of its terms. . .  Absent a specific employee-initiated inquiry, however, a fiduciary is

5   not obligated to seek out employees to ensure that they understand the plan's provisions as

6   described in the explanatory booklet."); *Farr*, 151 F.3d at 915 (Ninth Circuit recognized that

7   employer did not have a duty to provide plaintiffs with individualized notice of all the ways the

8   tax laws would impact each of their individual distributions, but concluded employer breached its

9   fiduciary duty when it failed to provide employees with sufficiently detailed, material information

10  it knew had significant tax consequences for its participants).[25]

11          TriNet also argues that because Ms. Echague had *actual knowledge* of the need to pay her

12  own premiums for the Policies after April 1, 2011, it cannot be held responsible for failing to

13  answer her question as to what she would be required to pay or where to send those payments.

14  TriNet Oppo. to MSJ at 23; TriNet MSJ at 20-21.  However, the evidence TriNet relies on shows

15  only that the Echague's knew that their *health care* under PCBB was terminating as of March 31,

16  2011, when new health care coverage under plaintiff's employer's policy would kick in.  *See, e.g.*,

17  TriNet MSJ at 20-21 (relying on plaintiff's April 1, 2011 email regarding the termination of his

18  health care coverage and wondering whether he could obtain COBRA coverage for a week while

19  his family's health care was switched to his employer's plan).  That correspondence does not

20

21   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [24]  *Minton v. Deloitte & Touche USA LLP Plan*, 09-05636 CW, 2011 WL 2181654 (N.D. Cal.
22  June 3, 2011), relied on by MetLife is similar.  There the Court simply noted that employees have
    a general duty to read and are bound by contents of SPD, and there is not a separate duty to inform
23  beneficiary of other benefits available.  There was no individual inquiry in that case about
    coverage.
24   [25]  Other cases likewise hold fiduciaries liable for misleading communications with participants,
    despite the fact that the SPD was clear.  *See, e.g., Smith v. Medical Benefit Adm'rs Group, Inc.*,
25  639 F.3d 277, 281 (7th Cir. 2011) ("By preauthorizing a medical treatment without first
    ascertaining whether that treatment is covered by the insurance plan, and indeed without warning
26  the insured that coverage might be denied notwithstanding the preauthorization, Auxiant could be
    thought to be misleading the insured to his detriment."); *McCravy v. Metro. Life Ins. Co.*, 690 F.3d
27  176, 181 (4th Cir. 2012) (plaintiff paid life insurance premiums for 19 year old daughter, which
    we accepted by defendants even though policy excluded coverage for children 19 and older; court
28  concluded plaintiff could state a claim for equitable surcharge for amount of life insurance policy
    as the result of a breach of fiduciary duty under (a)(3)).

United States District Court
Northern District of California

1    address coverage under the Policies at issue.  While Ms. Echague's February 22 email shows that

2    she was concerned that she "might" have to make payments on her own as of April 2011 to

3    prevent a lapse in coverage, she never received an answer to that question from TriNet.[26]

4         For the foregoing reasons, the Court concludes that TriNet breached its fiduciary duty to

5    provide complete and accurate information in response to Ms. Echague's inquiry about what she

6    needed to do (if anything) to continue her benefits.

7    **E.**        **MetLife's Responsibility for TriNet's Breach of its Fiduciary Duties**

8         Plaintiff contends that MetLife, as a co-fiduciary of TriNet, likewise had a duty to explain

9    to Ms. Echague how she could continue her Policy benefits and to convey accurate information in

10   response to her question to TriNet.  He, relatedly, argues that MetLife can be held liable for

11   TriNet's breach of its fiduciary duties.  In the briefing and at the hearing, plaintiff relied on

12   *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323 (9th Cir. 1985) and *Batchelor v. Oak Hill*

13   *Medical Group*, 870 F.2d 1446 (9th Cir. 1989).  However, the Ninth Circuit in *Gelardi* simply

14   recognized that where a Plan Administrator "serves at the pleasure" of the Board of Directors or

15   the employer, the employer and the Board have continuing fiduciary duties and liabilities "with

16   respect to the selection of the Administrator."  *Id*. at 1325.  Plaintiff does not allege that type of

17   claim here (*e.g*., that TriNet breached its fiduciary duty in selecting MetLife as the Claims

18   Administrator).  Similarly, in *Batchelor*, the Ninth Circuit recognized that an employer or its board

19   of directors who hire an Administrator for an ERISA plan may be ERISA fiduciaries (and owe

20   fiduciary duties to plan participants) but that responsibility is limited to their role in the selection

21   and retention of the plan Administrator.  *Id*. at 1447.  As such, these cases do not support TriNet's

22   attempt to place MetLife on the hook for TriNet's breach of its fiduciary duties.

23

24   _____

      [26]  MetLife contends that allegations regarding the terms Policies made in plaintiff's complaint
25   show that the Echagues knew that they were responsible for paying the life insurance premiums
      after March 2011.  MetLife Oppo. at 13.  MetLife is impermissibly conflating knowledge of
26   counsel (after the plans were produced and reviewed by plaintiff's attorney) with knowledge of
      plaintiff.  MetLife also argues that in an email dated April 1, 2011 "plaintiff acknowledged that
27   Carol's life insurance 'will be terminated as of today.'"  *Id*. at 14.  However, the email MetLife
      relies on is fairly read to be discussing health care benefits, because plaintiff was inquiring about
28   securing COBRA for a week during the transfer of his family's health care coverage to his
      employer's plan.  DT000278.

Plaintiff also relies on § 405(a) (29 U.S.C. § 1105(a)),[27] and *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 273 (2d Cir. 1992).  In *Diduck*, the Second Circuit recognized that while no statutory ERISA breach of fiduciary duty claim could be asserted against a non-fiduciary, a federal common law right of action might be recognized.  *Id.* at 273.  That case is inapposite to the facts here where MetLife is a fiduciary but only with respect to claims administration.  Moreover, as noted above, prior to receiving a claim for benefits, MetLife had no information regarding the identity of plan participants, much less knowledge of the communications between TriNet and the participants.

Plaintiff has not shown that MetLife is liable for TriNet's breach.

## F.  Remedy for TriNet's Breach

Following *Cigna*, courts have found that "make whole" monetary relief is available for breaches of fiduciary duties under (a)(3).  *See, e.g.*, *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 882 (7th Cir. 2013) (despite clear terms of the plan, defendant insurer could be liable under (a)(3) "by encouraging plan participants to call for coverage information before undergoing procedures, by telling plaintiff that [it] would pay for the procedure, and by not alerting [plaintiff] that she could not rely on the advice she received, lulled [plaintiff] into believing that [defendant] would cover the cost of the procedure."); *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 181 (4th Cir. 2012) (despite clear terms of the plan excluding life insurance coverage for children 19 and over, where insurer accepted premiums for such a child it breached its fiduciary and (a)(3) provided equitable relief in the form of payments of benefits); *Horan v. Reliance Std. Life Ins. Co.*, 2014 U.S. Dist. LEXIS 11427, *30-41 (D.N.J. Jan. 30, 2014) (plaintiff could state claim for equitable surcharge for fiduciary's use of misleading letter regarding life insurance benefit, despite fact that claim was contrary to unambiguous terms of the plan).

As recognized in *Cigna*, there are at least three types equitable relief under (a)(3) that

---

[27] Under 11 U.S.C. § 1105(a) a trustee may be liable for a co-trustee's actions where "he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach"; (ii) if, by his failure to in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (iii) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

United States District Court
Northern District of California

might apply to rectify a breach of fiduciary duties: plan reformation, equitable surcharge, and equitable estoppel.  131 S.Ct. at 1779-1880.  Given the factual situation at issue – where TriNet retained the Plan Administrator fiduciary duties and MetLife assumed the Claims Administrator fiduciary duties – equitable surcharge is the remedy best suited to remedy TriNet's fiduciary breach.  As the Supreme Court explained in *Cigna*, the "surcharge remedy" extends to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary, and encompasses make-whole relief, including relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty.  *Id*. at 1880.  As explained in *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012), "the remedy of surcharge could hold the [ERISA fiduciary] liable for benefits it gained through unjust enrichment or for harm caused as the result of its breach."  *See also Cigna*, 131 S.Ct. at 1881 (surcharge only appropriate "upon a showing of actual harm – proved (under the default rule for civil cases) by a preponderance of the evidence.").

Here, plaintiff has demonstrated actual harm from TriNet's breach of fiduciary duty by a preponderance of the evidence.  As discussed above, I reject TriNet's argument that the Echagues had actual knowledge that the Policies at issue were terminating because premium payments were due and not submitted.  Instead, the evidence is that Ms. Echague did not want her insurance to lapse, asked what payments "might" be necessary as of April 2011, and was given a non-responsive answer that merely included copies of letters she already had.  She became progressively sicker and died.  When plaintiff submitted the life insurance claim, he was surprised to learn that the Policies had lapsed.  Echague Decl., ¶ 12. Sufficient harm has been demonstrated on this record to support plaintiff's claim to equitable surcharge.

## III.  PLAINTIFF'S MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT

Plaintiff seeks leave to amend his complaint to assert a claim against TriNet for failure to produce documents required under 29 U.S.C. § 1024(b)(4) and § 1132(c)(2).  On August 31, 2011, plaintiff sent an email to TriNet requesting the production of documents related to the Policies, including the master policy, the SPD, premium payment information, and all correspondence regarding the Policies or his claim.  Plaintiff argues that TriNet's response was deficient because

TriNet failed to produce two categories of documents in response to plaintiff's request:

>     (1)     A complete Administrative Record.  Plaintiff argues that it was only after the filing of this lawsuit and the Court ordered discovery that TriNet provided the full Administrative Record; and

>     (2)     Other documents, which plaintiff claims still have not been produced, including the addendum to the Employee Handbook referenced in TriNet's leave of absence letter, and documents related to internal and inter-defendant communications, including communications contained in TriNet's client relationship management system NorthStar, as requested by plaintiff in his notices of deposition.  *See* Docket No. 104 at 4.[28]

29 U.S.C. § 1024(b)(4) provides that "the administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description."

Section 29 U.S.C. § 1132 (c)(1) provides:

> for any information which such administrator is required by this title to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $ 100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

Plaintiff argues that TriNet's failure to disclose violated 29 C.F.R. § 2560.503-1 (h)(2)(iii),[29] (m)(8)[30] and (b)(5)[31] because the withheld or belatedly produced documents were "relevant" to the claim determination at issue.

---

[28] Plaintiff also complained about TriNet's failure to produce the HR Passport log allegedly showing the frequency and times of participants' access to the site, but as clarified in subsequent briefing, that discovery had been produced.

[29] (h)(2)(iii) provides that "the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review" unless the claims procedure provide that "a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits."

[30] (m)(8) provides that documents which are "relevant" under (h)(2)(iii) include those:  (i) relied upon in making the benefit determination; (ii)  submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; and (iii) demonstrate compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination.

[31] (b)(5) provides that administrators have an obligation to "establish and maintain reasonable claims procedures" and to be reasonable, the claims procedures must "contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants."

TriNet opposes the leave to amend, arguing it would be futile because plaintiff cannot assert a claim against it under § 1132(c)(1).  TriNet first contends that it complied with the requirements of § 1024(b)(4) and § 1132(c)(1) when it sent the Plan documents, the only documents it was required to produce under 29 U.S.C. § 1024(b)(4).  TriNet asserts that it went beyond the requirements of ERISA when it provided plaintiff with additional documents, including correspondence and the TriNet Signature Benefit booklet, the MetLife claim form, and denial.  Oppo. to Mot. to Amend at 4.  Finally, TriNet argues that a claim for penalties under § 1132(c) *cannot* be based on a violation of 29 C.F.R. sections 2560.503-1(h)(2)(iii) or (m)(8), because the regulation at issue deals with "claim administration" implemented under 29 U.S.C. § 1133, and not "notice" otherwise required by ERISA.  *See, e.g., Bielenberg v. Law Offices of Brandon B. Mayfield*, 744 F. Supp. 2d 1130, 1143 (D. Or. 2010) (finding no cause of action for 1132(c) penalties for a violation of 2560.503-1(h)(2)(iii); noting that the "Second, the Third, Sixth, Seventh, and Eighth Circuits have held that 29 USC § 1132(c) may not be used to impose civil liability for the violation of 29 USC § 1133 or regulations implemented pursuant thereto.").

In Reply, plaintiff focuses almost exclusively on whether he can state a claim based on a violation of § 2560.503-1.  Plaintiff points out the split of authority in the Ninth Circuit on whether § 1132(c) claims for penalties can be based on violations of § 2560.503-1, and that courts in the Northern District of California *have* recognized such claims.  *See, e.g., Vincenzo v. Hewlett-Packard Co.*, C-12-cv-03480-JCS 2013, U.S. Dist. LEXIS 91530, *50-51 (N.D. Cal. June 28, 2013) (awarding penalties for failure to produce documents relevant to the claim determination under 29 C.F.R. § 2560.503-1(h)(2)); *Ramos v. United Omaha Life Ins. Co.*, 2013 U.S. Dist. LEXIS 1043, *13 (N.D. Cal. Jan. 3, 2013) ("Since a plan participant may sue an administrator under § 1132(c)(1) if the plan administrator fails to comply with a request for information, *see Sgro v. Danone Waters of North America, Inc.*, 532 F.3d 940, 945 (9th Cir. 2008), ERISA provides a specific remedy for an administrator's failure to provide documents on request. *See also* 29 C.F.R. § 2560.503-1(h)(2)(iii).").

However, this Court does not need to reach that question.  There is no ambiguity that 29 C.F.R. § 2560.503-1 addresses "claims procedures" and specifies the requirements benefits plans

and their administrators must meet in making their claims determinations.  § 2560.503-1(h)(2) addresses the "Appeal of adverse benefit determinations" and specifies that a "plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures" provide "that a claimant" shall have access to all "relevant" information regarding the claim for benefits, in order to allow the claimant to fully appeal the denial.  *See, e.g., Vincenzo v. Hewlett-Packard Co*., 2013 U.S. Dist. LEXIS 91530 at *54 (failure to produce records "prejudiced Plaintiff's ability to support his appeal").  As discussed at length above, the entity charged with making the claims determination here was MetLife, not TriNet.  The Court has already determined that MetLife produced an adequate "Administrative Record," therefore TriNet could not be liable for an alleged failure to produce an adequate Administrative Record.  With respect to the other documents allegedly withheld by TriNet (the Employee Handbook referenced in TriNet's leave of absence letter, and documents related to internal and inter-defendant communications, including communications contained in TriNet's client relationship management system NorthStar), plaintiff has failed to show how those documents could have been relevant to the claims determination made by MetLife.  Those documents, therefore, fall outside of the scope of (h)(2)(iii) and (m)(8).

In sum, there is no evidence that any of the withheld documents were or should have been "relevant" to the claim determination made by MetLife.  Plaintiff cites no regulation or case law that would require TriNet to have forwarded the allegedly withheld or belatedly produced documents at issue to MetLife so that MetLife could determine the life insurance claim at issue.  The fact that TriNet produced documents in addition to those included by MetLife in the Administrative Record is not surprising; the Court specifically allowed plaintiff to secure discovery in support of his fiduciary duty claim.  As such, I DENY the leave to amend as futile.  Plaintiff cannot state a claim under § 1132(c) based on the facts alleged.

## CONCLUSION

For the foregoing reasons, the Court finds in favor of plaintiff and against TriNet that plaintiff is entitled, through the doctrine of equitable surcharge, to the face value of the Policies in

United States District Court
Northern District of California

36

effect as of March 31, 2011.  Accordingly, plaintiff's motion for summary judgment is GRANTED on that issue.  It is DENIED in all other respects.  Defendant TriNet's motion for summary judgment is DENIED with respect to the equitable surcharge issue and GRANTED on all other issues.  Defendant MetLife's motion for judgment as a matter of law is GRANTED. Defendant PCBB's motion for summary judgment is GRANTED.  Plaintiff's motion for leave to amend is DENIED.

Plaintiff and TriNet shall submit a proposed Judgment consistent with this Order within ten days.

**IT IS SO ORDERED**.

Dated:  May 19, 2014



WILLIAM H. ORRICK
United States District Judge