UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNIE ECHAGUE,<br><br>    Plaintiff,<br><br>    v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, et al.,<br><br>    Defendants. | Case No. 12-cv-00640-WHO<br><br>**ORDER ON MOTIONS FOR ATTORNEY'S FEES**<br><br>Re: Dkt. Nos. 153, 159 |

## BACKGROUND

On May 19, 2014, I granted plaintiff's motion for summary judgment against defendant TriNet, and denied TriNet's cross-motion; finding that defendant TriNet had breached its fiduciary duties under ERISA by failing to provide full and accurate information regarding plaintiff's wife's life insurance policies. Docket No. 135. In that same order, I denied plaintiff's motion for summary judgment against defendant MetLife, and granted MetLife's cross-motion; and granted defendant PCBB's motion for summary judgment. *Id*. On August 22, 2014, I denied defendant TriNet's motion to alter or amend the judgment. Docket No. 163.

Plaintiff now moves for an award of attorney's fees and costs against defendant TriNet; seeking $395,145 in attorney's fees and $16,852.32 in costs, as well as 10% prejudgment and postjudgment interest on the $440,000 award. Reply Declaration of Rebecca Grey [Docket No. 172] ¶ 2. TriNet opposes that motion. Defendant PCBB also moved for an award of attorney's fees and costs against plaintiff, which plaintiff opposes.

## LEGAL STANDARD

Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g). The Ninth Circuit has held that a prevailing plan

participant such as plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984) (internal quotations omitted). In the ERISA context, the test is not whether plaintiffs prevail on all of their claims, but whether they "succeed on any significant issue in litigation which achieves some of the benefit [they] sought in bringing suit." *Smith*, 746 F.2d at 589 (internal quotations omitted).

"[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). To determine fees in cases of partial success, courts consider (1) whether the plaintiff failed to prevail on claims that were unrelated to the claims on which he succeeded, and (2) whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. *See, e.g., Watson v. County of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002). The "first step" requires determining whether the successful and unsuccessful claims were unrelated. Claims are unrelated if the successful and unsuccessful claims are "distinctly different" both legally and factually. *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001). "Hours expended on unrelated, unsuccessful claims should not be included in an award of fees." *Id*. at 1147.

If the unsuccessful and successful claims are related, under the "second step" the court evaluates the significance of the overall success obtained by the plaintiff in relation to the hours reasonably expended on the litigation. *Id*. (citing *Hensley*, 461 U.S. at 434-35). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. "A plaintiff may obtain excellent results without receiving all the relief requested." *Sorenson*, 239 F.3d at 1147.

If a plaintiff is entitled to fees, the plaintiff "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhardt*, 461 U.S. 424, 437 (1983). "When it sets a fee, the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Secalt S.A. v. Wuxi Shenxi Const. Mach. Co., Ltd*., 668 F.3d 677, 689 (9th Cir. 2012) (citation omitted); *Oster v. Std. Ins. Co*., 768 F. Supp. 2d 1026, 1034

(N.D. Cal.2011) ("In ERISA cases, attorneys' fees to a prevailing plaintiff are determined by a lodestar analysis, multiplying the number of hours reasonably expended on the matter by a reasonable hourly rate.").

"Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley*, 461 U.S. at 434. Accordingly, the district court should exclude from this initial calculation hours that were not "reasonably expended," including where a case is overstaffed or where claimed hours are "excessive, redundant, or otherwise unnecessary." *Id.* In the Ninth Circuit a "district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

**DISCUSSION**

**I. PLAINTIFF'S MOTION FOR ATTORNEY FEES AGAINST TRINET**

TriNet does not challenge plaintiff's entitlement to attorney's fees, but argues that reductions should be made for (1) the claims that plaintiff did not succeed on, and (2) the frivolous claims asserted against PCBB. TriNet also asserts that the hourly rate sought by plaintiff's lead counsel is too high. TriNet does not contend that plaintiff's counsel billed for excessive or redundant hours.

I agree that plaintiff, as the prevailing party and considering the applicable factors, deserves an award of attorney's fees and costs, but not in the full amount requested by plaintiff.[1]

**A. Reasonable Hourly Rates**

The "reasonable hourly rate" is calculated "according to the prevailing market rates in the relevant community . . . ." *Blum v. Stenson*, 465 U.S. 886, 896-96 (1984). "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community. . . are

---

[1] As explained by *Hummell v. S.E. Rykoff & Co*., 634 F.2d 446, 453 (9th Cir. 1980), the determination of whether a party is entitled to attorney's fees in an ERISA action depends on: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees would deter others from acting in similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). In the absence of opposing evidence, the proposed rates are presumed reasonable. *Id*.

Here, plaintiff seeks an hourly rate of $650 for lead counsel (Rebecca Grey), $250 per hour for an associate (Lauren Curtis), and $150 per hour for a paralegal (Erline Custodio). TriNet does not challenge the $250 rate for Curtis or $150 rate for Custodio. I find that the rates for Curtis and Custodio are reasonable, within the prevailing market rate, and approve them. *See, e.g., Oster v. Std. Ins. Co.*, 768 F. Supp. 2d 1026, 1034 (N.D. Cal. 2011) (ERISA case approving $600 for lead counsel, $400 for associates and $150 for paralegals).

TriNet challenges only the rate requested by lead counsel Rebecca Grey, arguing that a reasonable rate for Grey's time should not exceed $500 per hour. TriNet Oppo. at 8. In support of the request, Grey submits her own declaration (explaining her 18 years of experience and ERISA practice) and declarations from four other ERISA specialists who assert that $650 per hour is a reasonable and prevailing rate for someone of Grey's experience in the San Francisco Bay Area.[2]

TriNet challenges the $650 rate, by arguing that two of the declarants (Coleman and Kantor) have more experience than Grey, have handled more ERISA cases in District Courts in California according to PACER searches, and have larger more well-recognized firms. TriNet Oppo. at 6-8. TriNet also asserts that the only fee rate approved for Grey in District Courts in California was $450 an hour in 2009, and that awarding her $650 per hour now represents an unreasonable increase to her hourly rate. *Id*. at 7, 8. TriNet relies on a fee decision from the Central District – *Meguerditchian v. Aetna Life Ins. Co.*, 2014 U.S. Dist. LEXIS 111635 (C.D. Cal. Aug. 12, 2014) – where the court noted that Kantor (as a supporting declarant) had been awarded only $600 per hour, and awarded the attorney seeking fees in that case (with experience

---

[2] Declaration of Terrence J. Coleman [Docket No. 157], ¶¶ 9-10 (declaring that reasonable value of his time and current rate is $700 per hour and that $650 per hour is a reasonable rate for Grey); Declaration of Glenn R. Kantor [Docket No. 158], ¶¶ 7, 18 (declaring hourly rates for partners at his firm based in the Central District of California is $650 per hour but will rise to $700 per hour in January 2015, and that reasonable value of Grey's time is $650 per hour); Declaration of Michael McKuin [Docket No. 156], ¶¶ 7-8 (declaring reasonable value of his time and Grey's time is $650 per hour); Declaration of Julian M. Baum [Docket No. 155], ¶ 3 (declaring reasonable rate of Grey's time is $650 per hour).

1    comparable to Grey, but practicing in the Central District) only $600 per hour. *Id*. at * 7-9.

2    Finally, TriNet argues that the sharp increases in Grey and Coleman's fees ($40 per year from

3    2009 to 2014) is suspect because Kantor (who has 7 or 9 years more experience than Coleman and

4    Grey respectfully) raised his fees during the same period by only $22 per year.

5          As an initial matter, TriNet does not attack or undermine the testimony of Michael McKuin

6    or Julian M. Baum regarding McKuin's $650 per hour rate and their opinions that $650 is a

7    reasonable rate for Grey given her experience. I also find TriNet's attempt to negatively compare

8    Grey's rate to Kantor's rate not persuasive. Despite Kantor's additional experience, he is based in

9    the Central District, which is not as competitive or expensive a legal market as San Francisco.

10    *See, e.g., Meguerditchian v. Aetna Life Ins. Co.*, 2014 U.S. Dist. LEXIS 111635 at * 9; *but see*

11    *Oster v. Std. Ins. Co.*, 768 F. Supp. 2d 1026, 1034 (approving $600 rate in 2011 for Coleman).

12          Considering all of the evidence submitted, as well as the rates of fees approved for

13    similarly-situated ERISA practitioners in the Northern District, I find that $650 per hour is a

14    reasonable rate given Grey's extensive ERISA experience and the testimony from ERISA

15    specialists that $650 an hour is consistent with the prevailing rates for ERISA litigation specialists

16    in the San Francisco Bay Area.[3]

17    **B. Hours Expended**

18          TriNet argues that plaintiff's hours should be cut; not because the hours were

19    unreasonable, duplicative, or inefficient but because plaintiff was not successful on his claim

20    under 29 U.S.C. § 1132(a)(1)(B) or on his claims against PCBB (which TriNet argues were

21    frivolous). However, despite the fact that plaintiff submitted the detailed billing records of his

22    counsel, TriNet unhelpfully fails to provide a figure or otherwise suggest how much time should

23    be excised from plaintiff's request.

---

[3] TriNet raises various evidentiary objections to the declarations plaintiff submits in support of the requested hourly rates. Docket No. 164. TriNet asserts that large portions of those declarations lack foundation, lack personal knowledge, are hearsay, and impermissible opinion. As an initial matter, TriNet should have submitted its evidentiary objections as part of its opposition brief and not as a separate document. Civil Local Rule 7-3(a) ("Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum."). Nevertheless, having reviewed the merits of the objections, I OVERRULE them for purposes of determining the motions for attorney's fees.

Plaintiff counters that while he was ultimately unsuccessful on his claims under (a)(1)(B) and against PCBB, the discovery secured from all three defendants (after two Court Orders) and the arguments raised under both (a)(1)(B) and under (a)(3) were so intertwined to his ultimately successful claim, the time spent on (a)(1)(B) and against PCBB cannot and should not be separated out.

With respect to the hours plaintiff spent on the claim against PCBB, I agree with plaintiff that given the structure of PCBB's contract with TriNet to be the Plan Administrator and then TriNet's appointment of MetLife as the Claims Administrator, discovery from PCBB was necessary and related to plaintiff's ultimately successful argument against TriNet under (a)(3). I recognize that plaintiff did not move for summary judgment against PCBB or oppose defendants' motion for summary judgment in favor of PCBB, but that simply means that plaintiff did not expend any significant time addressing PCBB on the summary judgment briefing. There is, therefore, no time I can point to that was unnecessarily or unreasonably spent litigating against PCBB.

With respect to the time spent on the (a)(1)(B) claim, although plaintiff was ultimately unsuccessful on that claim, I find that the (a)(1)(B) claim and (a)(3) claim were adequately related in that they involved a common core of facts and were based on related, although distinct, legal theories. Plaintiff pled – and argued – that TriNet's conduct violated both (a)(1)(B) and (a)(3). While I ultimately disagreed with plaintiff on that issue – concluding there was no viable cause of action against TriNet under (a)(1)(B) – the factual and legal focus on both of the (a)(1)(B) and (a)(3) claims was that TriNet improperly interpreted the Plan terms, did not properly apply the Plan terms, and did not adequately communicate the Plan terms to plaintiff.[4]

Turning to the second, *Hensley* factor – level of success – TriNet does not dispute that plaintiff achieved exactly what he sought in his complaint; payment of the value of the policies. That full success was achieved with a significant time commitment by plaintiff's counsel.

---

[4] TriNet does *not* argue that the time spent by plaintiff challenging MetLife's claim determination (under (a)(1)(B)) or arguing that MetLife breached its own fiduciary duties should be excluded from plaintiff's counsel's time.

Moreover, as shown by the motion for reconsideration, the particular areas of ERISA involved in this case are not only complex, but also developing after the Supreme Court's decision in *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011). Moreover, ERISA cases are typically factually intensive (*see, e.g., Oster*, 768 F. Supp. 2d at 1036), and that was true here given the structure implemented by the three defendants to administer the insurance policies and make claim determinations under those policies.

Relatedly, I note that the number of hours spent litigating this case is quite high for an ERISA case; 700 hours of attorney time plus 125 hours of paralegal time.[5] However, the case history shows that case was hard fought, involved multiple rounds of substantive briefings (on the standard of review, on discovery, on summary judgment, and on the motion for reconsideration) and more than normal case management, as the case was assigned to three different District Court Judges since its filing.

That said, having reviewed the detailed billing records filed by plaintiff's counsel, I will reduce the number of hours by 10% to account for excessive time spent on some on some of the more straightforward motions (*e.g.*, on the standard of review and attorney's fees motions). *See Moreno v. City of Sacramento*, 534 F.3d at 1112.

In his motion for attorney's fees, plaintiff seeks an award of $386,770 in fees. Motion at 15; Ex A. to Grey Decl. [Docket No. 154]. After a 10% reduction, the amount of attorneys' fees awarded is **$348,093.00**.[6]

C. Costs

In the Ninth Circuit, a court can award reasonable litigation out-of-pocket expenses that would normally be charged to a fee paying client, as part of "reasonable attorney's fees" under 29 U.S.C. §1132(g)(2)(D). *Trustees of the Const. Industry and Laborers Health and Welfare Trust v.*

---

[5] This is after plaintiff's counsel removed any attorney and paralegal time incurred by anyone other than herself while she was at her former firm. Declaration of Rebecca Grey [Docket No. 154] ¶ 15.

[6] The Court notes that plaintiff's counsel also asks to be compensated for time expended on PCBB's motion for attorney's fees, including drafting a reply and appearing at the hearing. This supplemental request, however, is limited on its face to time incurred as a result of PCBB's motion and, therefore, will be addressed below. *See* Docket No. 172.

7

*Redland Ins. Co.*, 460 F.3d 1253, 1258-59 (9th Cir. 2006). Plaintiff seeks an award of $16,853.32 in costs. TriNet does not oppose that award or dispute plaintiff's entitlement to particular costs. I find that plaintiff is entitled to an award of costs of $16,853.32.

**D. Prejudgment Interest**

A district court may award prejudgment interest on an award of ERISA benefits at its discretion. *Blankenship v. Liberty Life Assur. Co.*, 486 F.3d 620, 627 (9th Cir. 2007). TriNet argues that plaintiff cannot seek an award for prejudgment interest in its motion for attorney's fees, that he should have sought prejudgment interest through a motion to amend or alter the judgment under Federal Rule 59(e), and have made that motion within the 28 days following entry of judgment under Rule 59(e). The parties also dispute, if prejudgment interest is warranted, what that level of interest should be.

I need not reach the question of whether plaintiff may move for prejudgment interest in a motion for attorney's fees filed after the 28 day deadline for Rule 59(e) motions because I find, on the particular facts in this case, that prejudgment interest is not warranted. As the Ninth Circuit has explained, the purpose served by awarding a plaintiff prejudgment interest where ERISA benefits have been unlawfully withheld is to compensate a plaintiff for the losses incurred as a result of the nonpayment of benefits. *See Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir. 2001). Prejudgment interest is also "an element of compensation, not a penalty." *Id*. Relatedly, "[a]lthough a defendant's bad faith conduct may influence whether a court awards prejudgment interest, it should not influence the rate of the interest." *Id*.

Here, I have determined that MetLife – the Claim Administrator responsible for paying out benefits – was not liable to plaintiff. Instead, the only liability was TriNet's, as the Plan Administrator, for failure to provide full and accurate information regarding the terms of plaintiff's wife's life insurance policies. In these circumstances, where TriNet's did not unlawfully withhold benefits but breached a fiduciary duty and was required to compensate plaintiff as a matter of equity, I do not find prejudgment interest is appropriate.

**E. Post-judgment Interest**

Title 28 U.S.C. § 1961(a) provides that post-judgment interest "shall be calculated from

the date of the entry of the judgment." TriNet does not oppose an award of post-judgment interest, but argues that plaintiff's request for interest at 10% is too high and argues the Treasury bill rate should apply instead. TriNet Oppo. at 10. Plaintiff provides no support for imposing post-judgment interest at any rate *other* than the one specified in 28 U.S.C. § 1961(a). Therefore, the amount awarded shall be calculated from the date of the entry of judgment, at a rate, "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

Therefore, I award $348,093.00 in attorney's fees; $16,853.32 in costs; and post-judgment interest at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment against TriNet.

## II. PCCB'S MOTION FOR ATTORNEY FEES AGAINST PLAINTIFF

PCBB filed a motion seeking an award of attorney's fees against Mr. Echague, arguing that the case against PCBB was frivolous and baseless. Docket No. 169. Plaintiff opposes that motion, and seeks his fees incurred in defending against it. Docket Nos. 167, 168. In Reply, PCBB agreed to withdraw its motion, seeking instead, through TriNet's opposition to plaintiff's motion for fees, a reduction in *plaintiff's* fees as a result of the failure of his case against PCBB. PCBB, nonetheless, filed a lengthy Reply for the sole purpose of disputing what it characterizes as plaintiff's counsel's misrepresentations of the record. Docket No. 169.

I will not address the specifics of the asserted mischaracterizations, but comment that *both* defense and plaintiff's counsel have used overly aggressive and borderline inappropriate language in their briefing on this case. Plaintiff's counsel has been the most aggressive in her choice of language and has occasionally mischaracterized both the orders of the Court and the defenses' arguments. I make these comments only to caution counsel that I expect a higher degree of professionalism from counsel than the briefing exhibits.

With respect to plaintiff's request for fees incurred in responding to PCBB's now-withdrawn motion for attorneys fees (Docket No. 172), in my discretion under 29 U.S.C. §

1132(g), I GRANT in part that motion. PCBB's motion totally lacked merit, in light of the high standard applied in the Ninth Circuit for awards of attorney's fees against plaintiffs under ERISA. *See, e.g., Cline v. Indus. Maint. Eng'g & Contr. Co.*, 200 F.3d 1223, 1236 (9th Cir. 2000) (attorney's fees not justified unless bad faith shown based on plaintiff's lack of "reasonable belief" in claim); *see also Flanagan v. Inland Empire Elec. Workers Pension Plan & Trust*, 3 F.3d 1246, 1253 (9th Cir. 1993) ("we see no justification, on this record, to displace our common perception that attorney's fees should not be charged against ERISA plaintiffs.").

However, the amount of time requested by plaintiff's counsel to oppose PCBB's motion is excessive. Plaintiff's counsel *estimated* that it would take 26 hours to respond to PCBB's motion, as well as review PCBB's reply and prepare for oral argument on PCBB's motion. Grey Decl. (Docket No. 172) ¶ 2. However, the Court vacated the hearing on the attorney's fees motion. As such, and considering a reasonable amount of time for the opposition, I award Grey seven hours ($4,550), the associate 10.2 hours ($2,550), and the paralegal 3 hours ($450) for drafting the opposition to PCBB's motion; amounting to $ 7,550 in attorney's fees. I also award plaintiff his costs in opposing PCBB's motion of $148.44.

## CONCLUSION

For the foregoing reasons, I GRANT plaintiff's motion for attorney's fees and costs. I award $348,093.00 in attorney's fees; $16,853.32 in costs; and post-judgment interest at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment against TriNet. I also award $7,550.00 in fees and $148.44 in costs against PCBB.

**IT IS SO ORDERED**.

Dated: September 24, 2014

WILLIAM H. ORRICK
United States District Judge